IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CRAIG REED<br>4217 South Arlington Road<br>Uniontown, Ohio 44685<br><br>and<br><br>SURVIVOR FILMS, INC.<br>801 New Park Court<br>St. Augustine, Florida 32084,<br><br>    Plaintiffs,<br><br>v.<br><br>FREEBIRD FILM PRODUCTIONS, INC.<br>f/k/a Freebird Video Productions, Inc.<br>546-A Kingsley Avenue<br>Orange Park, Florida 32073<br><br>and<br><br>FLY ON, INC.<br>c/o Haber Corporation<br>16830 Ventura Blvd., #501<br>Encino, California 91436<br><br>and<br><br>CABIN FEVER ENTERTAINMENT, INC.<br>100 West Putnam Avenue<br>Greenwich, Connecticut 06830<br><br>and<br><br>VECTOR MANAGEMENT, INC.<br>1607 17th Ave. South<br>Nashville, Tennessee 37212<br>615-269-6600<br><br>and | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:   Case No.:_____<br>:<br>:<br>:<br>:<br>:<br>:   Judge _____<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:   Jury Demanded<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

| | |
|---|---|
| JUDY VAN ZANT JENNESS<br>1963 Salt Myrtle Lane<br>Orange Park, Florida 32073 | : <br> : <br> : <br> : |
| and | : <br> : |
| GARY ROSSINGTON<br>16830 Ventura Blvd., Suite 501<br>Encino, California 91436 | : <br> : <br> : <br> : |
| and | : <br> : |
| ROSS SCHILLING<br>1607 17th Ave. South<br>Nashville, Tennessee 37212 | : <br> : <br> : <br> : |
| and | : <br> : |
| HALLMARK ENTERTAINMENT DIST., LLC<br>1325 Ave of the Americas<br>New York, New York 10019 | : <br> : <br> : <br> : |
| and | : <br> : |
| ARTISAN ENTERTAINMENT, INC.<br>2700 Colorado Avenue<br>Santa Monica, California 90404 | : <br> : <br> : <br> : |
| and | : <br> : |
| LYNYRD SKYNYRD PRODUCTIONS, INC.<br>c/o Harbor Corp.<br>16830 Ventura Blvd., #501<br>Encino, California 91436 | : <br> : <br> : <br> : <br> : |
| Defendants. | : |

# COMPLAINT

Now come Plaintiffs Craig Reed and Survivor Films, Inc., by and through counsel, and, for their Complaint against Defendants, hereby allege and aver as follows:

## THE PARTIES

1. Plaintiff Craig Reed is an individual residing in this judicial district at 4217 South Arlington Road, Uniontown, Ohio 44685. Among other things, Plaintiff Reed is a professional stage hand and has worked in that capacity for multiple professional recording and performing artists including Foreigner, Journey, The Rossington Collins Band, The Allen Collins Band, The Marshal Tucker Band, Lynyrd Skynyrd, and numerous others.

2. Plaintiff Survivor Films, Inc. ("Survivor") is a Tennessee corporation with its principal place of business located at 801 New Park Court, St. Augustine, Florida, 32084. Plaintiff Survivor is in the business of owning, producing, licensing, and distributing audiovisual works, films, and motion pictures as well as operating an Internet website. Plaintiff Reed is the sole owner of Plaintiff Survivor.

3. Defendant Freebird Film Productions, Inc. ("Freebird Film") is a film and video production company organized under the laws of the State of Florida and with its principal place of business in Orange Park, Florida. Among other things, Defendant Freebird Film produced, marketed, and distributed one or more video productions (hereinafter "DVDs" regardless of medium) related to the band Lynyrd Skynyrd. One such DVD related to Lynyrd Skynyrd is entitled FREEBIRD…THE MOVIE. Upon information and belief, Defendant Rossington is the president and a director of Defendant Freebird Film. Upon information and belief, Defendant Jenness is the treasurer and statutory agent for Defendant Freebird Film. Prior to September 1995, Defendant Freebird Film was known as Freebird Video Productions, Inc. ("Freebird Video").

4. Defendant Fly On, Inc. ("Fly On") is a corporation organized under the laws of the State of Florida and with its principal place of business in Encino, California. Upon information and belief, Defendant Rossington is the president and a director of Defendant Fly

On. Upon information and belief, Defendant Johnny Van Zant is the treasurer and a director of Defendant Fly On.

5. Upon information and belief, Defendant Cabin Fever Entertainment, Inc. ("Cabin Fever") is a Connecticut corporation with its principal place of business in Greenwich, Connecticut. Among other things, Defendant Cabin Fever produces and/or distributes television and film works including certain Lynyrd Skynyrd products.

6. Upon information and belief, Defendant Vector Management, Inc. ("Vector") is a Tennessee corporation with it principal place of business in Nashville, Tennessee.

7. Defendant Judy Van Zant Jenness is an individual residing within the State of Florida. Upon information and belief, Defendant Jenness is the treasurer and statutory agent for Defendant Freebird Film. Defendant Jenness was married to Ronnie Van Zant (Lynyrd Skynyrd's original lead singer) from 1972 until his death in 1977.

8. Defendant Gary Rossington is an individual residing within the State of California and is a founding and current member of the band Lynyrd Skynyrd. Upon information and belief, Defendant Rossington is the president and is a director of Defendant Freebird Film. Upon information and belief, Defendant Rossington is the president and is a director of Defendant Fly On. Upon information and belief, Defendant Rossington is the president and is a director of Defendant Lynyrd Skynyrd Productions, Inc.

9. Defendant Ross Schilling is a Tennessee resident. Defendant Schilling was, and still is, upon information and belief, an employee of Defendant Vector and serves as part of the management team for the band Lynyrd Skynyrd.

10. Upon information and belief, Defendant Hallmark Entertainment Distribution, LLC ("Hallmark") is a New York company with its principal place of business in New York,

New York. Defendant Hallmark has marketed and/or distributed one or more DVD's featuring the band Lynyrd Skynyrd.

11. Upon information and belief, Defendant Artisan Entertainment, Inc. ("Artisan") is a California corporation with its principal place of business in Santa Monica, California. Defendant Artisan has marketed and/or distributed one or more DVD's featuring the band Lynyrd Skynyrd.

12. Defendant Lynyrd Skynyrd Productions, Inc. ("L.S. Productions") is a corporation organized under the laws of the State of Florida with its principal place of business in Encino, California. Upon information and belief, Defendant Rossington is the president and a director of Defendant L.S. Productions.

## JURISDICTION AND VENUE

13. This Court has original jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a) and under principles of supplemental jurisdiction outlined in 28 U.S.C. §§ 1338(b) and 1367.

14. This Court has personal jurisdiction over the Defendants because each of the Defendants has had substantial contacts with Ohio related to the actions and offenses alleged in this Complaint.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTS APPLICABLE TO ALL CAUSES OF ACTION

16. For over 30 years, Plaintiff Reed has worked as a professional stage hand throughout the United States and in Europe for musical performing artists. Plaintiff Reed has worked as a stage hand, drum technician, production assistant, audio production manager, guitar

technician, and stage manager. Plaintiff Reed has worked for nationally and internationally known artists such as Foreigner, Journey, The Rossington Collins Band, The Allen Collins Band, The Marshal Tucker Band, Lynyrd Skynyrd, and numerous others. Plaintiff Reed has toured with multiple artists throughout the world.

### Plaintiff Reed's History with Lynyrd Skynyrd

17. From January 1, 1974, through October 20, 1977, and from 1987 until 2005, Plaintiff Reed worked for the band Lynyrd Skynyrd in various capacities including stage hand, drum technician, production assistant, audio production manager, guitar technician, and stage manager. In 1976 and 1977, Plaintiff Reed served Lynyrd Skynyrd as drum technician and as a guitar technician. Plaintiff Reed rendered services for Lynyrd Skynyrd as recently as April 2008 when the band performed in Cleveland, Ohio.

18. In 1976 and 1977, as a personal project and hobby, Plaintiff Reed shot a total of approximately 90 minutes of concert and "behind the scenes" film footage containing various members of Lynyrd Skynyrd and its crew.

19. On October 20, 1977, while on tour with Lynyrd Skynyrd, Plaintiff Reed was a passenger on Lynyrd Skynyrd's famous airplane that crashed in Mississippi, which claimed the lives of the pilot, co-pilot, and four passengers, including Lynyrd Skynyrd's lead singer, Ronnie Van Zant. The crash left all of the surviving passengers, including Plaintiff Reed, severely injured.

20. After the October 20, 1977, airplane crash, Lynyrd Skynyrd disbanded until 1987 when the band reformed. Johnny Van Zant, the younger brother of the late Ronnie Van Zant, assumed the role as lead singer.

21. Since reforming in 1987, Lynyrd Skynyrd has performed hundreds of live performances and has released numerous audio and video recordings.

22.     During the period after Lynyrd Skynyrd's reformation in 1987, Plaintiff Reed continued to work for the band in various capacities. Upon information and belief, Plaintiff Reed is the longest-standing member of Lynyrd Skynyrd's stage crew and is one of the few members of the stage crew to have worked with the band's original lineup.

23.     Upon information and belief, Lynyrd Skynyrd continues to be an extremely popular musical group, selling upwards of one million records each year and generating in excess of $10 million in touring revenue annually from performances throughout the United States, including several shows in Ohio each year. As of 2001, according to the Recording Industry Association of America, Lynyrd Skynyrd had sold more than 23 million records. Lynyrd Skynyrd was inducted into the Rock & Roll Hall of Fame in Cleveland, Ohio, in 2006.

**Plaintiff Reed's Production of the Lynyrd Skynyrd "Home Video"**

24.     Some time after the October 1977 plane crash, Plaintiff Reed edited his 1976 and 1977 home movie footage to create two reels of film entitled "Craig Reed – LYNYRD SKYNYRD – 8MM Film Reel – ONE" and "Craig Reed – LYNYRD SKYNYRD – 8MM Film Reel – TWO," respectively (hereinafter "Reel 1" and "Reel 2" individually, and "the Film," collectively).

25.     Plaintiff Reed filmed Reel 1 and Reel 2 using a personal 8mm movie camera that he purchased with his own personal funds.

26.     Plaintiff Reed did not film Reel 1 or Reel 2 at the request, or under the direction, of any employer or any Defendant in this action.

27.     Plaintiff Reed decided when and where to film the various portions of Reel 1 and Reel 2 and decided what to include on those film reels.

28.     Plaintiff Reed was under no obligation to film any part of Reel 1 or Reel 2.

29. Plaintiff Reed was under no obligation to edit any of his film footage to create either Reel 1 or Reel 2.

30. Although Plaintiff Reed filmed Reel 1 and Reel 2 in 1976 and 1977, Plaintiff Reed retained sole and exclusive possession of Reel 1 and Reel 2 until 1995.

**Defendants' Production of FREEBIRD...THE MOVIE**

31. In or around the early summer of 1995, Defendant Jenness contacted Plaintiff Reed and asked whether Plaintiff Reed would be willing to license his summer 1977 film footage for use in a documentary about Lynyrd Skynyrd that Defendants Freebird Video and/or Defendant Cabin Fever were producing.

32. Plaintiff Reed stated that he would be willing to license some of his film footage for use in a Lynyrd Skynyrd documentary project.

33. On or about July 31, 1995, Plaintiff Reed entered into a written agreement with Defendant Freebird Video (n/k/a Freebird Film) regarding Defendant Freebird Video and Defendant Cabin Fever's use of Plaintiff Reed's film footage in their Lynyrd Skynyrd documentary (hereinafter, "the Documentary Agreement").

34. Plaintiff Reed provided a copy of Reel 1 to Defendant Cabin Fever for review and for consideration for use in the Lynyrd Skynyrd documentary being produced by Defendants.

35. Ultimately, Defendants Freebird Video and Cabin Fever produced a documentary about the original Lynyrd Skynyrd band entitled, "FREEBIRD...THE MOVIE."

36. "FREEBIRD...THE MOVIE" included portions of Plaintiff Reed's Reel 1 film footage.

37. Defendant Freebird Film served as one of the production companies for FREEBIRD...THE MOVIE.

38. Defendant Cabin Fever served as one of the production companies, the domestic video distributor, and the domestic theatrical distributor for FREEBIRD...THE MOVIE.

39. Upon information and belief, Defendants Hallmark and/or Artisan eventually acquired some or all of Defendant Cabin Fever's rights for FREEBIRD...THE MOVIE.

40. Upon information and belief, Defendants Hallmark and/or Artisan have distributed and sold copies of FREEBIRD...THE MOVIE.

41. Defendant Rossington was an actor in FREEBIRD...THE MOVIE.

42. Defendant Jenness was an Executive Producer for FREEBIRD...THE MOVIE.

43. Defendants released "FREEBIRD...THE MOVIE" in or around August 1996.

44. In the Documentary Agreement, Defendant Freebird Video promised Plaintiff Reed that "[p]rovided any of the [Reed] Footage is included in the Documentary, . . . we agree to pay you 2.5% of our net profits derived from exploitation of the Documentary itself in any manner or media."

45. Defendants Freebird Video, Cabin Fever, Hallmark, and Artisan have failed to pay Plaintiff Reed any portion of the profits from "FREEBIRD...THE MOVIE."

**Defendants' Other Uses of Plaintiffs' Film**

46. As alleged above, Plaintiff Reed provided a copy of Reel 1 to Defendants in or around July 1995.

47. Plaintiff Reed retained Reel 2 in his sole and exclusive possession until 2002.

48. In or around June 2002, Defendant Schilling and/or Defendant Vector contacted Plaintiff Reed to inquire as to whether Plaintiff Reed had any film footage of the original Lynyrd Skynyrd band other than the footage contained on Reel 1.

49. Plaintiff Reed advised Defendants Schilling and Vector that he had Reel 2 and stated that Reel 2 contained "never before seen" footage of the original Lynyrd Skynyrd band.

50. Defendants Schilling and Vector represented that they, and possibly others, were interested in potentially licensing some or all of Reel 2.

51. Defendants Schilling and Vector requested an opportunity to review Reel 2 in order to determine whether they would license or some or all of the Reel 2 footage.

52. In or around July 2002, Plaintiff Reed tendered a copy of Reel 2 to Defendants Schilling and Vector for the sole purpose of allowing Defendants Schilling and Vector to preview Reel 2 to determine whether they would be interested in licensing some or all of Reel 2 at an agreed price and under agreed terms.

53. Thereafter, Defendants began using excerpts of Reel 2, as well as excerpts of Reel 1, in various media without Plaintiff Reed or Plaintiff Survivor's permission.

54. Defendants performed and/or displayed the Film publicly by showing portions of the Film at live concert events where Lynyrd Skynyrd performed.

55. Upon information and belief, concerts where Defendants performed the Film publicly occurred in at least 1996, 1997, 2003, 2004, 2005, and 2007.

56. Upon information and belief, Defendants performed the Film publicly in at least 80 concerts in 2007 alone.

57. Upon information and belief, Defendants performed portions of the Film publicly to promote certain of Defendants' live performances.

58. Some of the concerts where Defendants performed the Film publicly took place in this judicial district.

59. Defendants copied, used, displayed, and/or distributed excerpts of the Film in the DVD entitled LYNYRD SKYNYRD – LYVE FROM STEEL TOWN.

60. Upon information and belief, the DVD entitled LYNYRD SKYNYRD – LYVE FROM STEEL TOWN sold in excess of 100,000 units and was certified as "Gold" by the Recording Industry Association of America.

61. Defendants copied, used, displayed, and/or distributed excerpts of the Film in the DVD entitled LYNYRD SKYNYRD LYVE – THE VICIOUS CYCLE TOUR.

62. Upon information and belief, the DVD entitled LYNYRD SKYNYRD LYVE – THE VICIOUS CYCLE TOUR sold in excess of 100,000 units and was certified as "Gold" by the Recording Industry Association of America.

63. Defendants copied, used, displayed, and/or distributed excerpts of the Film in the DVD entitled 2003 NASHVILLE LIVE.

64. Defendants copied, used, displayed, and/or distributed excerpts of the Film in the music video for the song SIMPLE MAN.

65. Defendants copied, used, displayed, and/or distributed excerpts of the Film in the music video for the song FREEBIRD.

66. Defendants copied, used, displayed, and/or distributed excerpts of the Film in the music video for the song SWEET HOME ALABAMA.

67. Defendant Freebird Film was involved in the creation, duplication, distribution, marketing, and/or sale of one or more of the video projects listed in Paragraphs 59-66 above.

68. Defendant Fly On was involved in the creation, duplication, distribution, marketing, and/or sale of one or more of the video projects listed in Paragraphs 59-66 above.

69. Defendant Cabin Fever was involved in the creation, duplication, distribution, marketing, and/or sale of one or more of the video projects listed in Paragraphs 59-66 above.

70. Defendant Vector Management was involved in the creation, duplication, distribution, marketing, and/or sale of one or more of the video projects listed in Paragraphs 59-66 above.

71. Defendant Jenness was involved in the creation, duplication, distribution, marketing, and/or sale of one or more of the video projects listed in Paragraphs 59-66 above.

72. Defendant Rossington was involved in the creation, duplication, distribution, marketing, and/or sale of one or more of the video projects listed in Paragraphs 59-66 above.

73. Defendant Van Zant was involved in the creation, duplication, distribution, marketing, and/or sale of one or more of the video projects listed in Paragraphs 59-66 above.

74. Defendant Schilling was involved in the creation, duplication, distribution, marketing, and/or sale of one or more of the video projects listed in Paragraphs 59-66 above.

75. Defendant Hallmark was involved in the creation, duplication, distribution, marketing, and/or sale of one or more of the video projects listed in Paragraphs 59-66 above.

76. Defendant Artisan was involved in the creation, duplication, distribution, marketing, and/or sale of one or more of the video projects listed in Paragraphs 59-66 above.

77. Defendant L.S. Productions was involved in the creation, duplication, distribution, marketing, and/or sale of one or more of the video projects listed in Paragraphs 59-66 above.

78. Defendant Freebird Film benefited financially from the creation, duplication, distribution, and/or sale of one or more of the projects listed in Paragraphs 59-66 above.

79. Defendant Fly On benefited financially from the creation, duplication, distribution, and/or sale of one or more of the projects listed in Paragraphs 59-66 above.

80. Defendant Cabin Fever benefited financially from the creation, duplication, distribution, and/or sale of one or more of the projects listed in Paragraphs 59-66 above.

81. Defendant Vector Management benefited financially from the creation, duplication, distribution, and/or sale of one or more of the projects listed in Paragraphs 59-66 above.

82. Defendant Jenness benefited financially from the creation, duplication, distribution, and/or sale of one or more of the projects listed in Paragraphs 59-66 above.

83. Defendant Rossington benefited financially from the creation, duplication, distribution, and/or sale of one or more of the projects listed in Paragraphs 59-66 above.

84. Defendant Van Zant benefited financially from the creation, duplication, distribution, and/or sale of one or more of the projects listed in Paragraphs 59-66 above.

85. Defendant Schilling benefited financially from the creation, duplication, distribution, and/or sale of one or more of the projects listed in Paragraphs 59-66 above.

86. Defendant Hallmark benefited financially from the creation, duplication, distribution, and/or sale of one or more of the projects listed in Paragraphs 59-66 above.

87. Defendant Artisan benefited financially from the creation, duplication, distribution, and/or sale of one or more of the projects listed in Paragraphs 59-66 above.

88. Defendant L.S. Productions benefited financially from the creation, duplication, distribution, and/or sale of one or more of the projects listed in Paragraphs 59-66 above.

89. Neither Plaintiff Reed nor Plaintiff Survivor ever authorized any of the Defendants to use any of the Film in any of the projects referenced in Paragraphs 59-66 or the concerts referenced herein.

90. On or about January 8, 2008, Plaintiff Reed assigned all rights, title, and interest in Reel 1 and Reel 2 to Plaintiff Survivor. Plaintiff Survivor currently holds those rights today.

## COUNT I – BREACH OF CONTRACT

91. Plaintiffs reassert Paragraphs 1 through 90 of their Complaint as if fully set forth here.

92. Plaintiff Reed and Defendants Freebird Video and Cabin Fever entered into the Documentary Agreement.

93. The Documentary Agreement provided, in part, that Defendants would pay Plaintiff Reed 2.5% of the net profits derived from FREEBIRD…THE MOVIE.

94. Defendants Freebird Video and Cabin Fever have failed to pay Plaintiff Reed or Plaintiff Survivor 2.5% of the net profits derived from FREEBIRD…THE MOVIE pursuant to the Documentary Agreement.

95. Plaintiffs have performed all of their obligations under the Documentary Agreement.

96. Defendants' breach of the Documentary Agreement has damaged Plaintiffs in an amount to be proved at trial.

## COUNT II – COPYRIGHT INFRINGEMENT

97. Plaintiffs reassert Paragraphs 1 through 96 of their Complaint as if fully set forth here.

98. Plaintiff Reed is the author of Reel 1 and Reel 2.

99. Plaintiff Survivor Films is the assignee of all rights, title, and interest in Reel 1 and Reel 2.

100. Plaintiff Survivor Films holds United States Copyright Registration No. PA 1-596-609 for Reel 1. A copy of the Certificate of Registration for Reel 1 is attached hereto as Exhibit A.

101. Plaintiff Survivor films holds United States Copyright Registration No. PA 1-596-611 for Reel 2. A copy of the Certificate of Registration for Reel 1 is attached hereto as Exhibit B.

102. Defendants have infringed Plaintiffs' copyrights in Reel 1 and Reel 2 by including excerpts of Reel 1 and/or Reel 2 in live performances and video projects referenced above, which were produced, marketed, and/or distributed by one or more of the Defendants.

103. One or more of Defendants' uses of Plaintiffs' Film described above constitutes an unauthorized reproduction of Plaintiffs' copyrighted work in violation of 17 U.S.C. § 106(1).

104. One or more of Defendants' uses of Plaintiffs' Film described above constitutes the preparation of an unauthorized derivative work based upon Plaintiffs' copyrighted work in violation of 17 U.S.C. § 106(2).

105. One or more of Defendants' uses of Plaintiffs' Film described above constitutes an unauthorized distribution of copies of Plaintiffs' copyrighted work in violation of 17 U.S.C. § 106(3).

106. One or more of Defendants' uses of Plaintiffs' Film described above constitutes an unauthorized public performance of Plaintiffs' copyrighted work in violation of 17 U.S.C. § 106(4).

107. One or more of Defendants' uses of Plaintiffs' Film described above constitutes an unauthorized public display of Plaintiffs' copyrighted work in violation of 17 U.S.C. § 106(5).

108. Defendants' infringement of Plaintiffs' copyrights in Plaintiffs' Film has damaged Plaintiffs in an amount to be proven at trial.

109. Defendants knew or reasonably should have known that Reel 1 and Reel 2 were protected by copyright.

110. Defendants' infringement of Reel 1 and Reel 2 was willful.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Craig Reed and Survivor Films, Inc. respectfully demand a judgment in their favor as follows:

a) Awarding Plaintiffs 2.5% of all net profits earned on Defendants' sales of FREEBIRD...THE MOVIE, plus interest from the date that such monies were due to Plaintiffs;

b) Ordering Defendants to cease and desist all reproduction, distribution, public performance, and public display of Plaintiffs' Film and stop creating derivative works based upon or including the Film;

c) Ordering the destruction all materials containing unauthorized excerpts or copies of Plaintiffs' Film and all unauthorized derivative works based upon the Film;

d) Awarding Plaintiffs actual damages for Defendants' copyright infringement;

e) Awarding Plaintiffs the profits realized by Defendants as a result of their infringement of Plaintiffs' rights in the Film;

f) Ordering that Defendants render an accounting to Plaintiffs for any and all gains, profits, and benefits derived from Defendants' acts of infringement and breach of contract and, for all damages sustained by Plaintiffs by reason of Defendants' acts of infringement and breach of contract complained of in this Complaint, and ordering that all such amounts be deemed to be held in constructive trust for Plaintiffs.

g) Awarding Plaintiffs their costs and expenses incurred in pursuing this action.

h) Awarding Plaintiffs such further and additional relief as this Court deems just and equitable.

Respectfully submitted,

s/ H. Alan Rothenbuecher
H. Alan Rothenbuecher (0041883)
hrothenbucher@szd.com
T. Earl LeVere (0063515)
elevere@szd.com
Schottenstein Zox & Dunn Co., LPA
US Bank Centre at Playhouse Square
1350 Euclid Avenue, Suite 1400
Cleveland, Ohio 44115
Telephone: 216-621-6501
Facsimile: 216-394-5092
Attorneys for Plaintiffs Craig Reed and
Survivor Films, Inc.