IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CRAIG REED, *et al.*, | ) |
| Plaintiffs, | ) |
| vs. | ) CASE NO. 1:08CV1761 |
| FREEBIRD FILM PRODUCTIONS, INC., *et al.*, | ) JUDGE CHRISTOPHER A. BOYKO |
| Defendants. | ) |

**PLAINTIFFS' MOTION FOR LEAVE TO FILE *INSTANTER*
A SUR-REPLY MEMORANDUM IN OPPOSITION
TO THE LYNYRD SKYNYRD DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Craig Reed and Survivor Films, Inc. move this Court for leave to file *instanter* the attached Sur-Reply Memorandum in Opposition to the motion for summary judgment filed by Defendants Freebird Film Productions, Inc., Fly On, Inc., Vector Management, Inc., Gary Rossington, Ross Schilling, and Lynyrd Skynyrd, Inc. (hereinafter, the "Lynyrd Skynyrd Defendants"). The reasons for this motion are set forth in the attached Memorandum in Support.

s/ T. Earl LeVere
H. Alan Rothenbuecher, Esq.
  hrothenbuecher@szd.com
T. Earl LeVere, Esq.
  elevere@szd.com
Schottenstein Zox & Dunn, Co., LPA
US Bank Center at Playhouse Square
1350 Euclid Avenue, Suite 1400
Cleveland, Ohio 44115
Phone: (216) 394-5075
Facsimile: (216) 394-5092

*Attorneys for Plaintiffs Craig Reed and
Survivor Films, Inc.*

## MEMORANDUM IN SUPPORT

Plaintiffs seek leave from this Court to file the attached Sur-Reply Memorandum in Opposition to the Lynyrd Skynyrd Defendants' motion for summary judgment. Plaintiffs wish to respond to the new detail and authority asserted by Defendants in support of their argument that there is no market for Plaintiffs' Film because, according to Defendants, Defendants' rights of publicity preclude Plaintiffs from commercializing the Film without Defendants' permission. Defendants' argument forms the central premise to their fair use defense and the central point of their reply memorandum in support of their motion for summary judgment.

On or about January 20, 2009, the Lynyrd Skynyrd Defendants filed their motion for summary judgment and supporting memorandum seeking, *inter alia*, a ruling as a matter of law that each of Defendants' multiple copies of Plaintiffs' Film was a fair use under 17 U.S.C. § 107. The single largest portion of Defendants' opening brief addresses Defendants' fair use argument—consuming over half of their argument section and six full pages of text. Defendants bear the burden of proof on this issue.

One of the four statutory factors of a fair use analysis is the effect of the accused copying on the potential market for, or value of, the plaintiff's copyrighted work. 17 U.S.C. § 107(4). Although arguing in their opening brief that this is the "most important" factor (see Defendants' Memorandum in Support [Doc. 56] at 18), and despite the volume dedicated to this defense and their bearing the burden of proof on the issue, Defendants offer only two substantive sentences arguing that this factor weighs in their favor: "[T]here is no market for Reed's Film other than Lynyrd Skynyrd's sanctioned use of it. Any commercial use of the Film by Reed would require the consent of the members of Lynyrd Skynyrd (or their estates) because their likenesses are embodied in it." Id. at 18-19. Defendants support this proposition with a single citation to the

Sixth Circuit's general definition of the right of publicity set forth in *ETW Corp. v. Jireh Publ'g, Inc. Id.* at 19, note 105 (citing 332 F.2d 915, 928 (6th Cir. 2003) (which, contrary to Defendants' position, held as a matter of law that the mass-production and commercial sale of a print containing Tiger Woods' likeness did not infringe Tiger Woods' right of publicity).

Plaintiffs attacked Defendants' incorrect and unsupported conclusion that the Lynyrd Skynyrd Defendants' rights of publicity prevent a commercial market for Plaintiffs' Film. Plaintiffs' Memorandum in Opposition [Doc. 82] at 18-19. Plaintiffs also criticized the conclusory nature of Defendants' argument and their lack of any real analysis of the issue. *Id.*

Apparently recognizing their shortcoming, the Lynyrd Skynyrd Defendants dedicate nearly six pages of their reply brief to this argument. Defendants' Reply Memorandum [Doc. 85] at 7-10, 13-15. In fact, Defendants' right of publicity is the primary focus of Defendants' reply memorandum. However, because Defendants bear the burden of proof on this issue (*Princeton University Press v. Michigan Document Services, Inc.*, 99 F.3d 1381, 1389, n.5 (6th Cir. 1996)), and because their alleged rights of publicity forms a central basis of their fair use theory, Defendants were obligated to assert this argument fully in their opening memorandum rather than wait and "sandbag" Plaintiffs with it on reply. A summary judgment movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes *demonstrate the absence* of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Defendants' right of publicity exposition in their reply memorandum is far more detailed than the conclusory two sentences in their opening brief. More importantly, however, their analysis is still flawed and their conclusion is still wrong. Plaintiffs will suffer unfair prejudice if

Defendants are allowed to advance their newly-minted analysis in their reply memorandum when they should have done so initially. A party may not make arguments for the first time in its reply brief. *See Jones v. Reynolds*, 438 F.3d 685, 695 (6th Cir. 2006) (stating, "*Davis v. Brady*, 143 F.3d 1021 (6th Cir.1998), was cited for the first time in Jones' reply brief, where new arguments may not be made" citing *Rush v. Ill. Cent. R.R. Co.*, 399 F.3d 705, 727 n. 19 (6th Cir.2005)). As a general rule, courts do not entertain issues raised for the first time in a reply brief. *United States v. Crozier*, 259 F.3d 503, 517 (6th Cir.2001) (citing *Bendix Autolite Corp. v. Midwesco Enters., Inc.*, 820 F.2d 186, 189 (6th Cir.1987)); *U.S. v. Demjanjuk*, 367 F.3d 623 (6th Cir. 2004) (applying this concept in the appeal context, "In fact '[c]ourt decisions have made it clear that the appellant cannot raise new issues in a reply brief; he can only respond to arguments raised *for the first time* in appellee's brief." (internal quotations omitted, quoting *United States v. Jerkins*, 871 F.2d 598, 602 n. 3 (6th Cir.1989))). Plaintiffs' discussion of the right of publicity was in response to Defendants' initial passing reference thereto. Because Plaintiffs did not raise the issue "for the first time" in their memorandum in opposition, Defendants' may not now assert an analysis that they should have attempted in the first instance.

If this Court is inclined to consider Defendants' now-invigorated theory and newly asserted caselaw (as opposed to striking it altogether) then, at a minimum, this Court should allow Plaintiffs the opportunity to address the assertions in Defendants' reply memorandum. Any other course would deprive Plaintiffs of the opportunity to address Defendants' theory in total—an opportunity which due process requires. Accordingly, in the interests of justice, Plaintiffs request leave to file the attached sur-reply memorandum *instanter*.

Respectfully submitted,

s/ H. Alan Rothenbuecher
H. Alan Rothenbuecher, Esq.
  hrothenbuecher@szd.com
T. Earl LeVere, Esq.
  elevere@szd.com
Schottenstein Zox & Dunn Co., LPA
US Bank Center at Playhouse Square
1350 Euclid Avenue, Suite 1400
Cleveland, Ohio 44115
Phone: (216) 394-5075
Facsimile: (216) 394-5092

*Attorneys for Plaintiffs Craig Reed and Survivor Films, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2009, a copy of the foregoing Plaintiffs' MOTION FOR LEAVE TO FILE *INSTANTER* A SUR-REPLY MEMORANDUM IN OPPOSITION TO THE LYNYRD SKYNYRD DEFENDANTS' MOTION FOR SUMMARY JUDGMENT was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

s/ H. Alan Rothenbuecher
H. Alan Rothenbuecher

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CRAIG REED, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) CASE NO. 1:08CV1761 |
| vs. | ) |
| | ) JUDGE CHRISTOPHER A. BOYKO |
| FREEBIRD FILM PRODUCTIONS, INC., | ) |
| *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFFS' SUR-REPLY MEMORANDUM IN OPPOSITION
TO THE LYNYRD SKYNYRD DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

I. <u>INTRODUCTION</u>

Despite waiting until their reply memorandum to flesh out their assertion that the Lynyrd Skynyrd Defendants' rights of publicity preclude a commercial market for Plaintiffs' film, their analysis still misses the mark. Defendants argue that the four fair use factors enumerated in 17 U.S.C. § 107 weigh in their favor and compel a summary judgment on Count II of Plaintiffs' Complaint. This Sur-Reply Memorandum only addresses Defendants' newly expanded argument that their rights of publicity preclude all commercial uses of Plaintiffs' Film. Plaintiffs' address the remaining three fair use factors in their opposition brief [Doc. 82] and demonstrate why these factors do not support a summary judgment in Defendants' favor.

II. <u>LAW AND ARGUMENT</u>

The fourth fair use factor asks the Court to consider "the effect of the [accused] use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). Defendants argue that their unauthorized copying and exhibition of Plaintiff's copyrighted Film could not adversely impact the potential market or value of Plaintiffs' Film because, according to

Defendants, no such market exists without the blessing of Lynyrd Skynyrd. See, e.g., Defendants' Reply Memorandum [Doc. 85] at 13 (stating, "The Lynyrd Skynyrd Defendants have demonstrated that there is no legitimate market for the Film other than Lynyrd Skynyrd's sanctioned use of it." and "[B]ecause the Lynyrd Skynyrd organization's use of the Film had zero effect upon the potential market for or value of the Film, factor four heavily favors a finding of fair use."). In essence, Defendants argue that they have the exclusive right to control anything and everything embodying the name or likeness of any current or past member of the band.[1]

Defendants misconstrue the relevant Sixth Circuit case law and ignore the interplay between rights of publicity and the First Amendment. In ETW Corp. v. Jireh Publ'g, Inc., 332 F.3d 915 (6th Cir. 2003), Tiger Woods' appealed the summary judgment that defendant's production and sale of the image below did not violate his right of publicity (Id. at 919):



---

[1] Oddly, even if Defendants' publicity rights were absolute, which they are not, Defendants' own Opening Memorandum proves that there is, in fact, a market for Plaintiffs' Film. See Defendants' Opening Memorandum [Doc. 56] at 19, n.106.

ETW Corp. asserted multiple claims against Jireh Publishing. ETW Corp. moved for summary judgment on its claims and Jireh Publishing, Inc. filed a cross-motion for summary judgment that the prints were protected First Amendment expression, which did not infringe ETW Corp.'s rights. Id. The district court granted Jireh Publishing's motion and dismissed the case. Id. Affirming the district court's grant of summary judgment in favor of Jireh Publ'g, the Sixth Circuit held, as a matter of law, that the defendant's commercially producing and offering for sale over 5,000 copies of the print (some for as much as $700 each) did not infringe Tiger Woods' right of publicity even though the print contained the likeness of Tiger Woods. The court likewise found that defendant's use of Tiger Woods' name in connection with the marketing of the print did not infringe any of Tiger Woods' rights.

With respect to ETW's right of publicity claim, the Sixth Circuit described the narrow nature of publicity rights. Id. at 930. The court reaffirmed the black-letter rule that rights of publicity must give way to others' First Amendment rights. Id. (stating that the right of publicity "is fundamentally constrained by the public and constitutional interest in freedom of expression."). These constitutional limitations apply not only to uses of a celebrity's name or likeness in news reports, newspapers, and magazines but also to "entertainment or other creative works, including both fiction and non-fiction." Id. (quoting RESTATEMENT (THIRD) UNFAIR COMPETITION, Chapter 4 § 47, comment c). The question is not merely whether the particular product or item at issue incorporates the name or likeness of the celebrity but also whether the product (in this case, Plaintiffs' Film) constitutes expression protected by the First Amendment.

Defendants offer no facts or evidence on this latter question. Defendants have not even offered Plaintiffs' actual Film into evidence for the Court's consideration. Rather, Defendants state in their typical, conclusory, and pejorative fashion, "Reed merely pointed and shot a Super

8 camera and sold the unadulterated footage to the public." Defendants' Reply Memorandum [Doc. 85] at 8; see also Defendants' Opening Memorandum [Doc. 56] at 17 (stating, "With due respect to Reed, pointing and shooting a Super 8 movie camera does not require extraordinary skill."). Defendants cite no affidavit, pleading, discovery response, or other Rule 56 evidence to support these statements. Defendants ignore the creativity that Plaintiffs' allege: e.g., Plaintiff Reed selected the medium (film as opposed to photographs) and the particular type of film (Super 8 color); decided when, where, and what to film; and identified the vantage point from which it would be shot.[2] Plaintiff Reed subsequently exercised further creativity and expression when he edited his Film footage into two distinct works. Reed Dec. [Doc. 77] at ¶¶ 4, 6, 7, 10, 11. On a motion for summary judgment, the Court must construe all disputed facts in the light most favorable to the non-moving party. Defendants also admit that Plaintiffs' Film is at least "semi-creative." Defendants' Reply Memorandum [Doc. 85] at 12. At the very least, there is genuine issue as to whether Plaintiffs' Film is sufficiently creative and expressive to garner First Amendment protection and to fall outside of Defendants' rights of publicity.

Moreover, even assuming Plaintiffs' Film would not qualify as protectable First Amendment expression in its present form (which is, at best, unclear), Plaintiffs or others could adapt the Film for use as part of a derivative work that would undoubtedly satisfy the First Amendment test. Producers, like Defendants Freebird Video and Cabin Fever (and others referenced in Defendants' memorandum at note 106), routinely pay the owners of film for the right to use it in their productions. This is especially true when the footage holds some rare and/or historical significance. Accordingly, even if Plaintiffs' Film is not "transformative" in its present form, there is a market for it because Plaintiffs could easily create a commercial product

---

[2] The Southern District of New York recognized these very decisions as "elements of creativity" when considering Zapruder's twenty-seven seconds of Super 8 footage of the Kennedy assassination. Time Inc. v. Bernard Geis Associates, 293 F. Supp. 130, 143 (S.D.N.Y. 1968).

that would properly, transformatively — and probably profitably — use the Film (e.g., a Craig Reed video autobiography of his experience on the road with the band, using the historic footage to allow the viewer to "see it through Plaintiff Reed's own eyes," etc.). Defendants' use of Plaintiffs' Film without permission, or beyond the scope of their permission, would allow a reasonable jury to find that Defendants' have negatively impacted the market for Plaintiffs' film.

In an effort to deflect the focus from their own misdeeds, however, Defendants tar Plaintiff Reed as the wrongdoer by repeatedly referencing Plaintiff Reed's efforts to sell the Film nine years ago. Defendants' Reply Memorandum [Doc. 85] at 7. Defendants even analogize Plaintiff Reed to a "common T-Shirt bootlegger." Id. at 8.[3] Unfortunately for Defendants, what Plaintiff Reed has tried to sell in the past is not the sole measure of the market for the Film. The question under the fourth fair use factor is also the impact of the Defendants' copying on the potential market for, or value of, the copyrighted work. Zomba Enterprises, Inc. v. Panorama Records, Inc., 491 F.3d 574, 583-84 (6th Cir. 2007) (stating, "[W]e consider the effect on the potential market for licensing of the relevant musical compositions....[T]here can be no doubt that Panorama's practices, if they became widespread throughout the karaoke industry, would have a deleterious effect on the potential market for licenses to Zomba's songs."). Here, the potential market for Plaintiffs' Film includes not only the Film as a stand-alone work but also its value for use in works created by Plaintiffs or others.

Finally, even if Defendants' rights of publicity preclude Plaintiffs' commercial exploitation of the Film, the rights of publicity do not allow Defendants to exploit Plaintiffs' Film without permission or compensation any more than Tiger Woods could sell unauthorized copies of *The Masters of Augusta* without compensation to Jireh Publishing. The right of

---

[3] This is a glaringly false analogy, however, insofar as a "common T-Shirt bootlegger" would note be selling genuine Lynyrd Skynyrd t-shirts. Here, however, Plaintiffs' Film indisputably contains genuine footage of the band.

publicity is not a license to infringe copyrights nor does it convert an otherwise infringing copying into a fair use.

Defendants' reliance on the Carson and Michaels decisions is misplaced. The challenged use of "Here's Johnny...The World's Foremost Commodian" in Carson was a purely commercial effort to promote defendant's portable toilet business. John W. Carson v. Here's Johnny Portable Toilets, Inc., 698 F.2d 831, 836 (6th Cir. 1983). Commercial speech is entitled to far less protection than traditional First Amendment expression. Michaels v. Internet Entertainment Group, Inc. is equally inapplicable because the plaintiff there held not only a right of publicity but also the copyright in the video containing his likeness that defendant was using and selling. Michaels v. Internet Entertainment Group, Inc., 5 F. Supp. 823, 828 (C.D. Cal. 1998). Defendants' motion does not assert that they own the copyrights in the Film. Additionally, Michaels was a ruling on a motion for a preliminary injunction and was not an adjudication on the merits of any of the claims. Id.

Finally, Defendants' criticism of Iowa State University Research Foundation, Inc. v. American Broadcasting Companies, Inc., 621 F.2d 57 (2d Cir. 1980) as "old and irrelevant" is unavailing. Defendants' Reply Memorandum [Doc. 85] at 13. While Defendants are correct that Iowa State arose prior to the enactment of the current Copyright Act, the Second Circuit specifically applied the four fair use factors currently embodied in 17 U.S.C. § 107. Iowa State University Research Foundation, Inc., 621 F.2d at 60 and n.5. Defendants efforts to distinguish Iowa State based upon the court's finding of misrepresentations and bad faith by the defendants also fails. The record *sub judice* would easily support a finding of misrepresentations and bad faith here. Defendants lied to Plaintiff Reed about their purpose for requesting a copy of Reel 2, lied about their use of the Film, used the Film without Plaintiff Reed's authorization, and

threatened his job for protesting the use. Reed Declaration at ¶¶ 29-33, 35-37, 54. Accordingly, Iowa State is directly on point.

## III. CONCLUSION

Based upon the foregoing, this Court should find, at the very least, that there is a genuine issue of material fact as to whether Plaintiffs could commercially exploit the Film without offending the Lynyrd Skynyrd Defendants' rights of publicity. Under the fourth factor of the fair use analysis, there is, at worst, a genuine issue as to whether a potential market exists for Plaintiffs' Film and the impact on this market by Defendants' unauthorized uses of the Film. Because Defendants bear the burden of proof on this issue for purposes of their fair use defense and their motion for summary judgment, the fourth factor must weigh in Plaintiffs' favor and weighs against granting Defendants' motion.

Respectfully submitted,

s/ T. Earl LeVere
H. Alan Rothenbuecher, Esq.
  hrothenbuecher@szd.com
T. Earl LeVere, Esq.
  elevere@szd.com
Schottenstein Zox & Dunn Co., LPA
US Bank Center at Playhouse Square
1350 Euclid Avenue, Suite 1400
Cleveland, Ohio 44115
Phone: (216) 394-5075
Facsimile: (216) 394-5092

*Attorneys for Plaintiffs Craig Reed and Survivor Films, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2009, a copy of the foregoing PLAINTIFFS' SUR-REPLY MEMORANDUM IN OPPOSITION TO THE LYNYRD SKYNYRD DEFENDANTS' MOTION FOR SUMMARY JUDGMENT was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

s/ T. Earl LeVere<br>
T. Earl LeVere