IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CRAIG REED, et al., | ) CASE NO. 1:08-CV-01761 |
| Plaintiffs | ) |
| vs. | ) JUDGE CHRISTOPHER A. BOYKO |
| FREEBIRD FILM PRODUCTIONS, INC., et al., Defendants. | ) |

**DEFENDANT RHI ENTERTAINMENT DISTRIBUTION, LLC'S (SUCCESSOR IN INTEREST TO NAMED DEFENDANT HALLMARK ENTERTAINMENT DIST., LLC) BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE PORTIONS OF DEFENDANTS' REPLY BRIEFS AND SUPPORTING EVIDENCE**

Louis A. Colombo (0025711)
Brandt W. Gebhardt (0079823)
BAKER & HOSTETLER LLP
3200 National City Center
1900 East Ninth Street
Cleveland, Ohio 44114
(216) 621-0200 (telephone)
(216) 696-0740 (facsimile)
lcolombo@bakerlaw.com
bgebhardt@bakerlaw.com

*Attorneys for Defendant RHI Entertainment Distribution, LLC*

# **INTRODUCTION**

Plaintiffs' motion to strike (ECF 92) is meritless and no more than an effort to "have the last word" on the pending motions for summary judgment. RHI's reply brief (ECF 89) does not introduce new facts and arguments; rather, it properly rebuts factual and legal matters that Plaintiffs raised for the first time in their brief in opposition to summary judgment setting out their ever-evolving theory of the case. (ECF 75). Since Plaintiffs had to abandon their specious copyright claim, the *only* claim asserted against RHI in the Complaint, their theory has become a moving target, morphing into a third-party beneficiary claim at the December 17 status conference and now, in the alternative, a direct contract claim in their opposition brief. RHI's arguments and evidence in its reply brief appropriately respond to these new theories raised by Plaintiffs, and Plaintiffs' motion to strike is baseless and should be denied. Furthermore, Plaintiffs have suffered no harm as a result of RHI addressing these matters. They have already responded to these arguments in the supplemental briefing that they filed. Finally, Plaintiffs have failed in their motion under Fed. R. Civ. P. 56(f) to set forth facts essential to their opposition to RHI's motion for summary judgment that, for specified reasons, they cannot present.

# ARGUMENT

## I. RHI'S ARGUMENTS AND EVIDENCE APPROPRIATELY RESPOND TO FACTUAL AND LEGAL MATTERS RAISED FOR THE FIRST TIME IN PLAINTIFFS' OPPOSITION BRIEF.

### A. RHI's Reply Evidence Counters Plaintiffs' New Factual Assertions.

Plaintiffs claim that RHI should not be permitted to submit supplemental declarations along with its reply brief in support of summary judgment, basing their argument on a single, inapposite Ohio court decision.[1] (Pls' Mot. Strike 3.)

Federal courts, however, uniformly reject Plaintiffs' argument. In denying a motion to strike made on the same grounds Plaintiffs assert here, the court in *Baugh v. City of Milwaukee*, 823 F. Supp. 1452, 1456-1457 (E.D. Wis. 1993), *aff'd without opinion*, 41 F.3d 1510 (7th Cir. 1994), recognized that a movant for summary judgment must be permitted to offer evidence to rebut facts and theories first asserted in opposition to its motion:

> It seems absurd to say that reply briefs are allowed but that a party is proscribed from backing up its arguments in reply with the necessary evidentiary material. Such a rule would allow the party opposing the motion to gain an unfair advantage by submitting issues and evidentiary support that were unforeseen at the time the motion was first proffered.

(footnote omitted); *see also Smith v. Burns Clinic Medical Ctr., P.C.*, 779 F.2d 1173, 1175 n.6 (6th Cir. 1985) (approving consideration of affidavits attached to reply brief in support of summary judgment); *Wright v. Central State Univ.*, No. C-3-97-188, 1999 U.S. Dist. LEXIS 21711, *40-42 (S.D. Ohio July 9, 1999) (denying motion to strike relevant portions of affidavit

---

[1] *Carl Ralston Insurance Agency v. Kenneth A. Boldt Insurance Agency*, 2006 Ohio 3916 (Ohio Ct. App. 2006). This issue, however, is procedural and governed by federal law. *See Ruth v. Unifund CCR Partners*, Case No. 5:08CV2689, 2009 U.S. Dist. LEXIS 17362 at *8 n.6 (N.D. Ohio Mar. 6, 2009) (finding an Ohio procedural rule to be "of dubious applicability in [a] federal proceeding"). Furthermore, in *Carl Ralston*, the movant for summary judgment attached only a case and no evidence to its initial motion. 2006 Ohio 3916 at ¶12. Here, in contrast, RHI's initial motion included Jeffrey Ringler's extensive first declaration and numerous exhibits, and only material required to rebut Plaintiffs' new arguments was included with RHI's reply.

submitted with reply brief to rebut brief in opposition to summary judgment). Like the affidavits approved in these cases, RHI's supplemental declarations properly refute facts and theories first raised by Plaintiffs in their brief in opposition to summary judgment.

> 1. Plaintiffs Never Before Asserted That Jeff Waxman Was an Agent of Cabin Fever (RHI) Who Could Bind It to a Separate Oral Agreement to Pay 2.5% of Its Profits from the Movie to Reed.

Plaintiffs suggest that RHI should have anticipated that Plaintiffs would allege that Waxman was Cabin Fever (RHI)'s agent based on Waxman's involvement in production of the Movie. (Pls' Mot. Strike 2.) Why would anyone "assume" that fact when it was not alleged in the Complaint? Why would RHI assume Plaintiffs would even make a direct contract claim against RHI when the only claim asserted against RHI in the Complaint is for copyright infringement (Compl. ¶¶ 102-107), and when there is an express, written contract (also alleged in the Complaint, ¶ 33) that governs the license of Reed's footage to Freebird and the share of profits to be paid for that license? When Plaintiffs argued for the first time in their opposition to RHI's motion for summary judgment that Jeff Waxman's alleged discussions with Reed gave rise to a separate, direct contract between Reed and Cabin Fever (notwithstanding the Reed-Freebird Agreement (ECF 77-1) that covers the identical subject matter), RHI was entitled to introduce evidence to rebut that assertion.

More importantly, Plaintiffs have completely failed to demonstrate a genuine issue for trial on a direct contract theory. At the same time that Plaintiffs move to strike the Waxman Declaration, they argue that the declaration supports a separate oral contract between Reed and Cabin Fever (RHI) by pointing out that Waxman does not expressly deny agreeing to Reed's declared understanding of Cabin Fever (RHI)'s obligations. (Pls' Mot. Strike 2 n.2.) Plaintiffs cannot, however, prove by speculation an allegation that they themselves have failed to support

3

with evidence. While Reed declares that his discussions with Waxman informed his subjective understanding of Cabin Fever (RHI)'s obligations (Reed Decl. ¶ 18, ECF 77),[2] nowhere does he state that Waxman affirmatively promised him that Cabin Fever (RHI) would pay him 2.5% of its profits from the Movie or that Waxman otherwise assented to this term. Apparently, the most that Reed was willing to assert is that it was his subjective understanding that Cabin Fever (RHI) was to be so bound. His subjective understanding is, of course, irrelevant. *See In re Plankenhorn*, 228 B.R. 638, 640 (Bankr. N.D. Ohio 1998) (finding no contract under Ohio law where "there was no shared understanding" between the parties as to "a material term of the [alleged] oral contract"). There was no reason for RHI to respond through Waxman or otherwise to irrelevant evidence. Having failed to introduce any evidence of an affirmative promise or other assent by Waxman on behalf of Cabin Fever (RHI), Plaintiffs have not set out specific facts showing that the existence of a separate oral contract between Reed and Cabin Fever (RHI) regarding profit participation is a genuine issue for trial.[3]

Likewise, Plaintiffs have failed to set out specific facts sufficient to demonstrate a genuine issue for trial as to Waxman's alleged status as Cabin Fever (RHI)'s agent. Plaintiffs' proffered evidence pertains mainly to Reed's, and purportedly Freebird's,[4] subjective understanding of whether Waxman was Cabin Fever (RHI)'s agent. The only evidence of Cabin

---

[2] Plaintiffs characterize Reed's recitation of his subjective understanding of Cabin Fever's obligations to him as uncontested testimony. (Pls' Mot. Strike 2.) This characterization is simply untrue. RHI has shown that Reed's declared subjective understanding of the transaction not only contravenes the express language of the Reed-Freebird Agreement, which is the controlling manifestation of Reed and Freebird's meeting of the minds, but also is incoherent. (RHI's Reply Br. Supp. Mot. Summ. J. 3-7.)

[3] Fed. R. Civ. P. 56(e)(2): "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—**set out specific facts showing a genuine issue for trial**. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." (emphasis added.)

[4] Plaintiffs make much of the following language from the Reed-Freebird Agreement: "You have agreed to Federal Express to Jeff Waxman at Cabin Fever Entertainment . . ." (Pls' Mot. Strike 3 n.3.) This language does not reflect an understanding by Freebird that Waxman was Cabin Fever's agent but rather specifies the physical location where Reed was to ship the footage. Because Waxman was producing the Movie, it is perfectly obvious that he would be the one to receive and review film that was being made available for possible use in that movie.

4

Fever (RHI)'s conduct is the Cabin Fever Letter (ECF 77-2), which references neither Waxman nor any obligation to pay Reed 2.5% of Cabin Fever (RHI)'s profits from the Movie. Plainly, these facts do not give rise to a triable issue as to whether Waxman was Cabin Fever (RHI)'s agent. Plaintiffs' last-ditch theory of a direct contract between Reed and Cabin Fever (RHI) is factually unsupported.

### 2. Jeffrey Ringler's Supplemental Declaration Appropriately Rebuts Plaintiffs' Unfounded Challenges to His Initial Declaration.

In challenging Jeffrey Ringler's initial declaration on the grounds that he lacked personal knowledge, Plaintiffs mistakenly asserted that Ringler's personal knowledge went back only to 2006 because Ringler was not employed by RHI's predecessors. (Pls' Mem. Opp. 16.) RHI rebutted this inaccurate assumption by including with its reply brief in support of summary judgment a supplemental declaration from Ringler to the effect that he has been continuously employed by RHI and its predecessors since 1997 and that he has personal knowledge of the relevant acquisition of rights to the Movie. (Ringler 2d Decl. ¶ 1, ECF 89-3.)[5] Plaintiffs cite no authority indicating that such supplementation to refute an obvious error is improper.[6]

### B. RHI's Reply Arguments Properly Refute Plaintiffs' New Direct Contract Theory.

Plaintiffs cite numerous appellate decisions for the proposition that a court need not consider arguments raised for the first time in an appellant's reply brief. (Pls' Mot. Strike 6.) This proposition, however, is wholly inapplicable to the present case, where RHI properly raised

---

[5] Ringler's supplemental declaration also corrected Plaintiffs' mistaken claim as to RHI's revenues from theatrical release of the Movie. (Ringler 2d Decl. ¶ 2.)

[6] Plaintiffs fault Ringler's supplemental declaration for neglecting to state that Ringler has been personally involved in the purchase of rights to a movie library. (Pls' Mot. Strike 4.) As a Senior Vice President of RHI, as discussed in RHI's reply brief, Ringler had a right on behalf of RHI to rely, in seeking summary judgment, on the records of its predecessor with respect to the acquired rights, whether or not he was directly involved in actions that the production company took. (RHI's Reply Br. Supp. Mot. Summ. J. 13.)

arguments in rebuttal to Plaintiffs' theory of a direct contract between Reed and Cabin Fever (RHI) asserted for the first time in Plaintiffs' brief in opposition to summary judgment.

1. Plaintiffs Never Before Attempted to Rely on Inadmissible Parol Evidence to Bind Cabin Fever (RHI) to the Reed-Freebird Agreement.

RHI had no idea what arguments Plaintiffs might raise in their opposition brief, especially because Plaintiffs' theories keep evolving. Once Plaintiffs asserted arguments that are plainly precluded by the parol evidence rule by which they attempt to bind RHI to the Reed-Freebird Agreement (Pls' Mem. Opp'n Summ. J. 7-9), RHI had every right to point out that Plaintiffs' arguments were barred.

All the arguments in Plaintiffs' litany against application of the parol evidence rule to the Reed-Freebird Agreement are unavailing. (Pls' Mot. Strike 7 n.8.) First, contrary to Plaintiffs' mischaracterization of *Galmish v. Cicchini*, 90 Ohio St. 3d 22, 28 (Ohio 2000), a writing need not have an express integration clause to be an integrated agreement; it need only embody the complete agreement of the parties:

> The parol evidence rule applies, in the first instance, only to integrated writings, and an express stipulation to that effect adds nothing to the legal effect of the instrument. The presence of an integration clause makes the final written agreement no more integrated than does the act of embodying the complete terms into the writing.

Here, since Plaintiffs do not argue that the Reed-Freebird Agreement is incomplete, the parol evidence rule applies. Second, the agreement is not ambiguous with respect to the parties to be bound; both are clearly identified under signature blanks on the agreement. (RHI's Reply Br. Supp. Summ. J. 3.) Third, even if the agreement were to be construed against its drafter, the drafter is Freebird, not Cabin Fever (RHI). RHI is not affiliated with Freebird and thus cannot be

6

prejudiced by this rule of construction. (Ringler Decl. ¶ 13, ECF 50-5.) Fourth, Cabin Fever (RHI) is not a party to the Reed-Freebird Agreement merely by virtue of being referenced therein. (RHI's Reply Br. Supp. Summ. J. 3-4.) Plaintiff's contrary reasoning equally supports the ludicrous contention that the Reed-Freebird Agreement also binds Federal Express because it is the carrier designated to convey the footage from Reed to Waxman. For these reasons, the parol evidence rule prevents the Reed-Freebird Agreement from binding Cabin Fever (RHI).[7]

Although Plaintiffs later back away from the position that Cabin Fever (RHI) is bound by the Reed-Freebird Agreement (Pls' Mot. Strike 7), their assertion of a separate, direct contract between Reed and Cabin Fever (RHI) is itself untenable. The contractual term on which Plaintiffs' case against RHI hinges, namely **Freebird's** obligation to pay Reed 2.5% of its profits from the Movie, appears only in the Reed-Freebird Agreement. As discussed *supra* at pp. 3-4, Reed has not asserted that Waxman affirmatively promised or assented that Cabin Fever (RHI) would pay Reed 2.5% of **Cabin Fever's** profits from the Movie. In short, Plaintiffs have failed to set out specific facts of an agreement by Cabin Fever to pay any of its net profits to anyone, so there can be no genuine issue for trial. Consequently, the parol evidence rule precludes Plaintiffs' argument, and RHI is entitled to summary judgment even if the Court entertains this unpled claim.

---

[7] In arguing that the existence of other possible interpretations for the wording "our agreement" in the Cabin Fever Letter permits the introduction of extrinsic evidence (Pls' Mot. Strike 2 n.2), Plaintiffs misconstrue the parol evidence issue. RHI has not suggested that the **Cabin Fever Letter** is an unambiguous written embodiment of a contract, the terms of which cannot be varied by extrinsic evidence. Rather, RHI argues that the **Reed-Freebird Agreement** is an unambiguous written contract between Reed and Freebird such that extrinsic evidence, like the Cabin Fever Letter, cannot be admitted to bind Cabin Fever (RHI) when it is clear from the face of the contract that Cabin Fever (RHI) is not a party. (RHI's Reply Br. Supp. Summ. J. 3.) The problem that the Cabin Fever Letter poses for Plaintiffs' argument is not that it says too much but that it says too little. Whatever the wording "our agreement" means, Plaintiffs have offered no evidence that Cabin Fever (RHI) intended it as a promise to pay Reed 2.5% of its profits from the Movie. This promise appears nowhere outside the Reed-Freebird Agreement, an unambiguous written agreement to which Cabin Fever (RHI) is not a party.

### 2. Plaintiffs Never Before Alleged a Separate Contract Between Reed and Cabin Fever (RHI), Which Necessarily Lacks Consideration.

RHI properly raised in its reply brief the lack of consideration in any claimed separate, direct contract between Reed and Cabin Fever (RHI), which Plaintiffs posited for the first time in their brief in opposition to summary judgment. (Pls' Mem. Opp'n Summ. J. 7-9.) Plaintiffs argue that Cabin Fever (RHI) received consideration in that "[i]t received, analyzed, and used [Reed's] film footage in the documentary it produced and distributed." (Pls' Mot. Strike 8.) Reed's provision of his footage to Cabin Fever (RHI), however, was required by the Reed-Freebird Agreement. Thus, Cabin Fever (RHI) received this benefit from Freebird, not Reed, and there is no bargained-for detriment to Reed to support a separate, direct agreement with Cabin Fever (RHI). *See Seventh Urban, Inc. v. Univ. Circle Prop. Dev., Inc.*, No. 44617, 1982 WL 2617 at *3 n.6 (Ohio Ct. App. 1982) (finding no genuine issue for trial where the contract posited by defendant "would necessarily fail for lack of consideration (defendant already owed a pre-existing duty to maintain the premises under the lease)"). Plaintiffs set out no specific facts regarding other consideration sufficient to demonstrate a genuine issue for trial.

### 3. Plaintiffs Never Before Argued That Waxman Is an Agent of Cabin Fever (RHI).

Given that Plaintiffs first argued in their brief in opposition to summary judgment that Waxman bound Cabin Fever (RHI) to a separate, direct contract to pay Reed 2.5% of Cabin Fever's profits[8] from the Movie (Pls' Mem. Opp'n Summ. J. 8), RHI is entitled to challenge in its reply that Waxman was Cabin Fever (RHI)'s agent. Actual and apparent agency are dependent on the conduct of the alleged principal. *See Ottawa County Comm'rs v. Mitchell*, 17

---

[8] One wonders: Do Plaintiffs claim they have a right to 2.5% of both Freebird's net profits and 2.5% of Cabin Fever's net profits? Or do they think each company's net profits are the same, and each is to pay 1.25% of the total? Or that each company's profits are different and they can "work it out" between them? The various possibilities underscore that Plaintiffs' evolving claims designed to avoid the clear and unambiguous language of the Reed-Freebird agreement are increasingly ridiculous.

8

Ohio App. 3d 208, 214 (Ohio Ct. App. 1984) ("[W]hatever an agent may say about his specific authority to act for his principal, the law requires more to establish that authority than his own bare statements. . . . [S]uch assurances, standing alone, can never be satisfactory (or sufficient) proof of the agent's express . . . authority."); *Meyer v. Klensch*, 114 Ohio App. 4, 6 (Ohio Ct. App. 1961) ("The essential element in . . . a case [of apparent authority] is that the *principal* must do some act or in some way place his agent in such a position as to appear to have been given authority. It is the conduct of the *principal* and *not* the *agent* which establishes apparent authority."). Having proffered no evidence of any conduct on the part of Cabin Fever (RHI) that might imbue Waxman with actual or apparent authority, Plaintiffs argue that the Cabin Fever Letter and the accompanying payment ratified Waxman's supposed oral contract with Reed. (Pls' Mot. Strike 8-9.)

First, as discussed *supra* at pp. 3-4, Plaintiffs have not asserted that Waxman affirmatively promised or assented that Cabin Fever (RHI) would pay Reed 2.5% of Cabin Fever's profits from the Movie. Accordingly, there was no agreement concerning profit participation for Cabin Fever (RHI) to have ratified.

Second, even if Waxman had given such a promise or assent, the Cabin Fever Letter and accompanying payment in no way manifest Cabin Fever (RHI)'s intent to approve, or indeed even its knowledge of, any promise or assent to pay Reed 2.5% of Cabin Fever (RHI)'s profits from the Movie. *See Bailey v. Midwestern Enters.*, 103 Ohio App. 3d 181, 185 (Ohio Ct. App. 1995) (stating that ratification requires not only that the *principal* manifest its intention to approve its agent's nonbinding act but also that it do so with full knowledge of the relevant facts).

Third, Plaintiffs' argument makes no sense: Why would Cabin Fever agree to pay Reed for something it already had acquired the right to use from Freebird?

At most, the Cabin Fever Letter and accompanying payment refers to the two $2,500 payments contemplated by the Reed-Freebird Agreement, which the agreement stipulated might be made by Cabin Fever (RHI) and which Cabin Fever undisputedly made. Therefore, Plaintiffs have not set forth specific facts showing a triable issue as to whether Waxman was Cabin Fever (RHI)'s agent with respect to any promise or assent to pay Reed 2.5% of Cabin Fever (RHI)'s profits from the Movie.

## II. PLAINTIFFS HAVE NOT SHOWN THAT, FOR SPECIFIED REASONS, THEY CANNOT PRESENT EVIDENCE OR ARGUMENT ESSENTIAL TO THEIR OPPOSITION TO RHI'S MOTION.

Plaintiffs' motion under Fed. R. Civ. P. 56(f) is their final effort to keep this case on life support. In *First National Bank v. Cities Service Co.*, 391 U.S. 253, 297-299 (U.S. 1968), the U.S. Supreme Court ruled that Civil R. Civ. P. 56(f) does not permit a litigant to keep another party tied up in litigation by requesting additional discovery on peripheral matters after discovery on its central allegations has failed to uncover material issues of fact:

> [G]iven sufficient evidence of conspiracy, broader access to Cities' files for the period within which petitioner had already had discovery would have been in order. But in this case petitioner was attempting, in effect, to obtain discovery of peripheral aspects of Cities' alleged participation in the conspiracy, after having failed, despite already substantial discovery, to obtain any significant evidence of conspiracy for the period during which it was alleged to have directly injured him. . . . [S]uch a manner of proceeding was properly refused here.
>
> Notwithstanding Waldron's complaints about the limitations placed on his discovery of materials and witnesses, it is evident that he has had sufficient discovery either to substantiate his claims of conspiracy to the extent of raising a material issue of fact thereon, or of providing a basis for investigation of his own to gather additional evidence . . . . The fact that petitioner accomplished neither of these ends with the discovery he obtained is ample support for the trial judge's

10

> determination that **additional discovery would be futile and would merely operate to require Cities to participate further in litigation in which it had been originally joined solely on the basis of conjecture.**

(emphasis added) (footnotes omitted). In the present case, Plaintiffs, having abandoned the only claim they pled against RHI for lack of evidence after substantial discovery, request additional discovery regarding peripheral matters relating to an unpled theory. Because the additional discovery Plaintiffs request in their motion under Fed. R. Civ. P. 56(f) would be futile and would merely serve to keep RHI in a case in which it was originally included on the basis of conjecture, Plaintiffs' motion should be denied.

As RHI has advised Plaintiffs, the schedules to the Freebird-Cabin Fever Agreement referenced in Plaintiffs' Reply in Support of Plaintiffs' Rule 56(f) Motion (at 1, ECF 91) are not within RHI's possession, custody, or control. Plaintiffs' assertion that these schedules might enable them to prove that they were intended beneficiaries of the Freebird-Cabin Fever Agreement is pure fantasy. Assuming arguendo that the missing schedules would show that the two $2,500 payments to Reed were part of the film budget and that Reed's footage was referenced as a pre-recorded audiovisual material used in the documentary, these facts fall short of demonstrating a triable issue as to Reed's status as an intended beneficiary of the Freebird-Cabin Fever Agreement. (RHI's Br. Supp. Mot. Summ. J. 10-12, ECF 50-2.) Accordingly, the absence of these schedules does not constitute a specified reason Plaintiffs cannot present facts essential to their opposition sufficient to preclude summary judgment under Fed. R. Civ. P 56(f).[9]

---

[9] Plaintiffs misstate RHI's burden under Fed. R. Civ. P. 56(c). (Pls' Reply Supp. 56(f) Mot. 2.) Once RHI has shown "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(c), it becomes Plaintiffs' burden to "set out specific facts showing a genuine issue for trial," Fed. R. Civ. P. 56(e)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In any event, Plaintiffs' contention that RHI has provided no affirmative evidence that Reed was not an intended beneficiary of the Freebird-

In addition, Plaintiffs are not entitled to further discovery with respect to the recoupment status of the Movie. As established *supra* at pp. 3-5, Plaintiffs' have not set out specific facts sufficient to demonstrate a direct contract between Reed and Cabin Fever (RHI). Accordingly, Plaintiffs' right to payment of 2.5% of Freebird's profits from the Movie accrues only upon Freebird's receipt of such profits. (Reed-Freebird Agreement ¶ 4 ("We shall pay you your percentage of net profits as and when we receive monies . . . .").) Plaintiffs do not dispute that Freebird has received no royalties under the Freebird-Cabin Fever Agreement. Nor do they dispute that RHI has not recouped its costs expended on the Movie. Instead, Plaintiffs speculate that someone at some time may not have properly paid what was owed under the relevant license agreements pertaining to the Movie. (Pls' Reply Supp. 56(f) Mot. 3.) Even assuming arguendo that some small amount of money owed but not paid is missing from RHI's calculation of the recoupment status of the Movie, Plaintiffs have no right to any payment until such royalties are paid to Freebird.[10] Consequently, any monies owed but not paid in connection with the Movie do not amount to facts essential to Plaintiff's opposition to RHI's motion for summary judgment. *See* Fed. R. Civ. P. 56(f).

Furthermore, the evidence already submitted establishes that in the decade plus that the movie has been available, it has failed to generate sufficient revenues even to come close to recouping the dollars spent to produce it. (*See generally* Ringler Decl. ¶ 10). It would require

---

Cabin Fever Agreement is specious. (Pls' Reply Supp. 56(f) Mot. 2.) In its initial brief in support of summary judgment, RHI identified numerous facts that show that Reed could not have been an intended beneficiary of the Freebird-Cabin Fever Agreement. (RHI's Br. Supp. Mot. Summ. J. 10-12.) Moreover, contrary to Plaintiffs' assertion (Pls' Reply Supp. 56(f) Mot. 2), Cabin Fever (RHI) never paid Reed as a profit participant. The payments Cabin Fever (RHI) made to Reed were two flat fees of $2,500 (Reed Decl. ¶ 20); it is undisputed that no payments pegged to profits from the Movie were made to Reed (Reed Decl. ¶ 26).

[10] Plaintiffs pointed to a single issue in the voluminous royalty statements from RHI's licensees that they claimed indicated an error. As noted in RHI's Reply Brief, p. 14 fn. 10, RHI investigated this claim, found there was an error, and got it corrected. This will result in a minor change in the amount recouped, but will leave the Movie still far short of recoupment.

12

evidence of huge amounts of unpaid license royalties to change this. Plainly, RHI would not ignore its right to payment of such substantial royalties and there is no reason to allow Plaintiffs to impose additional litigation costs on RHI because of Plaintiffs' apparent delusion that a cult film should be generating massive royalties.

Finally, Plaintiffs baldly assert that there is an issue under Fed. R. Civ. P. 56(f) regarding "the intended meaning and scope of 'our agreement'" in the Cabin Fever Letter. (Pls' Mot. Strike 2 n.1.) Plaintiffs fail, however, to identify any facts essential to their claim that relate to this supposed issue and neglect to specify why, after conducting substantial discovery, they still are unable to present such facts. *See Searer v. W. Mich. Telecasters, Inc.*, 381 F. Supp. 634, 643 (W.D. Mich. 1974) (granting summary judgment "where it is clear that [further discovery under Fed. R. Civ. P. 56(f)] would not be directed at filling a specific evidentiary gap, but rather would consist of blind groping, undertaken in the hope of finding something to which this suit could be anchored"), *aff'd without opinion*, 524 F.2d 1406 (6th Cir. 1975). Plainly, further discovery as to the meaning of "our agreement" in the Cabin Fever Letter would be no more than a fishing expedition and is unwarranted.

Because the additional discovery requested by Plaintiffs is futile as regards their claims against RHI and would serve only to waste more legal and judicial time, Plaintiffs' motion under Fed. R. Civ. P. 56(f) should be denied.

## CONCLUSION

For the foregoing reasons and the ones set forth in RHI's earlier briefs in support of summary judgment, Plaintiffs' motions under Fed. R. Civ. P. 56(f) and to strike portions of RHI's reply brief and supporting evidence should be denied and RHI's motion for summary judgment should be granted.

Respectfully submitted,

/s/Louis A. Colombo
Louis A. Colombo (0025711)
Brandt W. Gebhardt (0079823)
BAKER & HOSTETLER LLP
3200 National City Center
1900 East Ninth Street
Cleveland, Ohio 44114
(216) 621-0200 (telephone)
(216) 696-0740 (facsimile)
lcolombo@bakerlaw.com
bgebhardt@bakerlaw.com

*Attorneys for Defendant RHI Entertainment Distribution, LLC*

# CERTIFICATE OF SERVICE

A copy of the foregoing was served upon counsel for plaintiffs and each of the defendants via the Court's electronic filing system this 30th day of March, 2009.

/s/Louis A. Colombo
*One of the Attorneys for Defendants*
*RHI Entertainment Distribution, LLC*

502344751