IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CRAIG REED, *et al.*, | ) |
| Plaintiffs, | ) ) ) |
| vs. | ) CASE NO. 1:08CV1761 ) |
| FREEBIRD FILM PRODUCTIONS, INC., *et al.*, | ) JUDGE CHRISTOPHER A. BOYKO ) ) ) |
| Defendants. | ) ) |

**REPLY TO DEFENDANTS' OPPOSITIONS TO PLAINTIFFS' MOTION TO STRIKE**

Both Defendant RHI Entertainment ("RHI") and the Lynyrd Skynyrd Defendants ("LS Defendants") state that their new arguments and evidence should not be stricken because they only rebut factual and legal matters raised by Plaintiffs in their summary judgment opposition brief. They argue that Plaintiffs' Motion to Strike is an attempt to have the last word on the issues, but then they engage in the very conduct of which they complain.

By way of example, instead of just addressing the prejudice and timeliness arguments made by Plaintiffs in their Motion to Strike, Defendant RHI uses its current opposition (ECF 93) to Plaintiffs' Motion to Strike to supplement and further develop the new summary judgment arguments first raised in its reply brief (ECF 89). Essentially, RHI uses its current opposition brief (ECF 93) as another "reply" to the summary judgment arguments first raised in its reply brief (ECF 89).[1] In doing so, RHI even further prejudices Plaintiffs, stealing from them the opportunity to fully address those new arguments and evidence, which the law and facts show are deficient. This is exactly why the Sixth Circuit holds new arguments and evidence raised via

---

[1] RHI essentially filed two summary judgment motions. It filed its original motion which was premised upon one set of arguments, and then used its reply brief (ECF 89) to raise a second set of arguments it contends warrant summary judgment for different reasons.

a reply brief are impermissible. *See Jones v. Reynolds*, 438 F.3d 685, 695 (6th Cir. 2006); *United States v. Crozier*, 259 F.3d 503, 517 (6th Cir.2001); *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 476 (6th Cir. 2002) ("…moving party precluded from springing new facts on the nonmoving party 'when it is too late for that party to contest them.'"). No matter how RHI and the LS Defendants try to excuse their conduct of raising new arguments and issues and providing new evidence via their reply briefs, Plaintiffs will suffer unfair prejudice if they are allowed to advance newly-minted analysis and evidence without giving Plaintiffs the opportunity to respond. This is especially so because the new arguments raised by Defendants via their summary judgment reply briefs (and now rehashed in their oppositions to Plaintiffs' Motion to Strike) are flawed.

1. <u>Contractual Claim Reed Asserts Against RHI.</u>

RHI contends that Plaintiffs' have not alleged a breach of contract claim against RHI. Plaintiffs' Complaint, however, ***does allege*** a breach of contract claim against Cabin Fever. RHI cannot continue to profess surprise over Plaintiffs' pursuit of the contract claim against RHI considering that it is the entity that assumed Cabin Fever's obligations relating to Freebird…The Movie. The Complaint placed RHI squarely on notice of the contract claim. And, because the evidence proffered to the Court, garnered during the extremely limited initial discovery, reveals a direct contract claim against Cabin Fever (and RHI as its successor), Civil Rule 15, at a minimum, permits the Court to amend the pleadings to reflect that evidence, so that the merits are addressed. Such amendment is particularly appropriate here because there is no prejudice to RHI. The case is still in its initial stages: a Case Management Plan has yet to be adopted and only initial written discovery has taken place. Moreover, Plaintiffs cannot be faulted for following the Court's instructions to first engage in written discovery and then respond to

Defendants' summary judgment motions, instead of amending pleadings to further describe a contract claim which already was alleged and which already applies to RHI via its assumption of Cabin Fever's obligations.

Specifically, Craig Reed declared that Jeff Waxman, who was understood by Reed (and also Defendant Freebird Video (Reed Dec. ¶17 Ex. A)) to be acting for Cabin Fever, made an express promise to Craig Reed that, if Reed provided to and let Cabin Fever use his historical Lynyrd Skynyrd film footage in a documentary that Cabin Fever was producing, Cabin Fever would (in consideration thereof) jointly or severally pay him $5,000 and 2.5% of its net profits from the documentary (*i.e.*, Freebird...The Movie). (Reed Dec. ¶18, 21; ECF 75). Cabin Fever even acknowledged in writing (*i.e.*, "our agreement") and then acted upon the agreement which Waxman, as its apparent or actual agent, entered into with Reed on its behalf (*i.e.*, Cabin Fever made the initial payments that Waxman promised). *Id.* at ¶18-21, Ex.B thereto. Why would Cabin Fever make the exact initial payments called for by the agreement that Waxman entered into with Reed, and then acknowledge that agreement in writing, if Cabin Fever had not authorized Waxman to bind Cabin Fever or if Cabin Fever instead believed that only Freebird Video was to pay Reed? The reason is because it did make—or at least ratified—the agreement.[2]

Reed has affirmatively stated that he had a direct agreement with Cabin Fever, negotiated by Jeff Waxman. *Id.* at ¶18-21. Neither Jeff Waxman nor anyone else who was present at that time has stated otherwise.[3] Only RHI, through a corporate executive it finally admits has no personal knowledge of any of the underlying events (Opp. Brief pg.5 n.6; ECF 93), has sought to

---

[2] Similarly, Defendants argue that Cabin Fever would not pay money to Reed because Cabin Fever did not receive consideration in return. The problem with this argument is that Cabin Fever did, in fact, receive consideration for the payment: Cabin Fever received from Reed the right to use certain film footage, for which it promised to pay pursuant to what it expressly referred to as "our agreement."

[3] The question about whether an individual was an authorized agent (via actual or apparent authority), or whether the agent's actions were ratified, are factual questions best left for the jury. *Arnett v. Midwestern Entertainment, Inc.*, 95 Ohio App. 3d 429, 434 (1994); *Bailey v. Midwestern Enterprises, Inc.*, 103 Ohio App.3d 181, 185 (1995).

argue—after the fact—that no such agreement exists with Cabin Fever. However, the undisputed and admissible facts, confirmed by Cabin Fever's own documents and the person most knowledgeable of the event (Craig Reed), show a direct contractual agreement between Reed and Cabin Fever. Cabin Fever, through Jeff Waxman (and later acknowledged in writing), agreed that it, either jointly with Freebird Video or severally by itself, would pay Reed 2.5% of the profits earned from Freebird...The Movie. (Reed Dec.¶¶18, 21).[4] When Cabin Fever started making payments under its acknowledged agreement with Reed, it became clear to Reed that Cabin Fever was to make those payments severally (*i.e.*, it would pay the promised royalty payment of $5,000 plus the required net profits arising from the movie). Thus, regardless of Reed's status as a third party beneficiary of the agreement between Cabin Fever and Freebird Video, he has a fully enforceable direct agreement (not subject to any parol evidence) with Cabin Fever.[5] These facts, construed in a manner most favorable to Reed, create a genuine issue of material fact as to the existence of a direct agreement between Reed and Cabin Fever, which RHI has assumed as part of its acquisition of Cabin Fever's catalog, including Freebird...The Movie.

2. The LS Defendants' Opposition Brief.

Apparently recognizing that it raised new arguments and proffered evidence for the first time in their reply brief, the LS Defendants concede that Plaintiffs' request for leave to file its sur-reply is warranted (ECF 94, pg.6). The LS Defendants do, however, contend the new declarations of Gary Haber and Judy Van Zant Jenness are appropriate because they merely

---

[4] RHI repeatedly contends Reed never declared that Cabin Fever would pay him 2.5% of the profits it earned from the documentary. The fact is that Reed *has* stated that he was to earn 2.5% of the profits from either Cabin Fever or Freebird Video jointly or severally. (Reed Dec. ¶¶18, 21).

[5] RHI states it had no idea what arguments Plaintiffs might raise. (ECF 93, pg.6). This is so because it never sought discovery on many of the issues (old and new) raised in its summary judgment briefing. By admitting its lack of knowledge, RHI necessarily confirms that further factual discovery and case development is warranted and should have taken place before it filed its summary judgment motion at this early stage in the proceedings.

support the declaration of Mark Avsec.[6] (ECF 94, pg.3). If such is the case, as the LS Defendants contend, then those declarations are unnecessary and can be stricken because, under case law cited by the LS Defendants, reply brief affidavits cannot be used to supplement earlier arguments.[7] *Peters*, 285 F.3d at 476, citing *McGinnis v. Southeast Anesthesia Assocs.*, 161 F.R.D. 41, 42 and n.1 (W.D. N.C. 1995) (allowing affidavits to accompany reply because they supported reply brief, not original motion). Accordingly, Plaintiffs' Motion for Leave to File a Sur-reply Brief should be granted and the declarations submitted by the LS Defendants in conjunction with their summary judgment reply brief should be stricken.

 3. <u>Civil Rule 56(f) Issue</u>.

Although not permitted to do so, and having failed to seek leave to file a sur-reply to Plaintiff's Rule 56(f) Reply Brief, RHI slyly uses its "opposition brief" to Plaintiffs' Motion to Strike to interject additional arguments about the alleged futility of the additional discovery requested by Reed. Apparently, it recognized its failure to address Reed's Rule 56(f) arguments before and seeks to make up for that deficiency through this "end around" filing. Even this filing, however, does not undermine the need for additional discovery on factual issues created by RHI.

First, RHI (and the LS Defendants) continue to state that no profits are due Reed because the costs associated with the documentary remain unrecouped. In relying upon this defense,

---

[6] The LS Defendants fail altogether to address the prejudicial nature of Ross Schilling's Supplemental Declaration, which further supports the conclusion that the declaration raises new facts which could have been raised earlier and otherwise inappropriately denigrates Plaintiffs.

[7] The new declarations were also apparently offered to show the accuracy of the financial summaries attached to the Avsec Declaration. (ECF 94, pgs 4-5). But, Plaintiffs already have shown the accounting performed by Defendants is prone to error (RHI Reply Brief, pg.14 n.10; ECF89). Further, no one with personal knowledge has testified about the accuracy of the financial summaries so heavily relied upon by Defendants, let alone authenticated them as business records under Fed. R. Evid. 803(6). To date, no one has identified who created the summaries, when they were created, and how they were created.

however, RHI and the LS Defendants continue to ask the Court to accept unproven summaries of costs and income, which RHI has admitted contained errors. It is simply unreasonable for Defendants to continue to hide behind a defense that remains untested, unproven (no person with first-hand knowledge has identified the unrecouped costs let alone substantiated them),[8] and which the Court has not permitted Plaintiffs to test via discovery.[9] And because Reed has a direct agreement with Cabin Fever regarding the payment of profits to him, he is entitled test the accuracy of the purported lack of profits and unrecouped costs.

Second, it is becoming clear that RHI would have the Court prevent any discovery on the schedules to the Freebird Video-Cabin Fever Agreement because it fears that such discovery will confirm that the parties contemplated Reed as a third party beneficiary. Why else would RHI protest so much about such simple discovery? Is there a person with knowledge of that agreement and its schedules who can provide evidence regarding those documents? Of course there is, but only discovery of such persons with knowledge of the schedules (and agreement) will resolve the issue of whether Reed was contemplated as a beneficiary under the Cabin Fever-Freebird Video Agreement.

---

[8] The LS Defendants actually admit that the financial documents which underlie Defendants "lack of profits" defense are hearsay which have yet to be properly authenticated. (ECF 94, pg.4 ..."the financial reports ... would likely be authenticated at trial by the testimony of the custodian or other qualified witness..."). Where there is no evidence of the standard business practice used to create the financial summaries, which is the case here, then the hearsay financial summaries are inadmissible. *See U.S. v. Yates*, 553 F.2d. 518, 521 (6th Cir. 1977) ("The mere fact that the recordation of the third party statements is routine, taken apart form the source of the information recorded, imports no guarantee of the truth of the statements themselves.").

[9] Indeed, the documents are not even RHI's documents, but were created long before RHI was in the picture, further emphasizing the need to verify the underpinnings of Defendants' assumed and unproven "lack of profits" defense. Absolutely no one has testified that the summaries Defendants rely upon are accurate or were created in the ordinary course of business. On the contrary, what has been proven is that Defendants' accounting of sales and costs has been inaccurate. (RHI Reply Brief pg.14 n10; ECF89). Finally, and perhaps most importantly, Plaintiffs have had no opportunity whatsoever to cross-examine or depose <u>anyone</u> with respect to any aspect of the documents that Defendants are relying upon to deny Plaintiffs their day in court.

To date, the parties have exchanged limited written discovery. There have been no depositions or third-party discovery. Thus, until such time as discovery is completed, this Court should stay RHI's "contemplation" defense or deny it outright because RHI still fails to provide any factual evidence to show that Reed (as a profit participant) was not contemplated or covered by the Cabin Fever-Freebird Video Agreement and its schedules. Indeed, the facts show that the Defendants did, in fact, contemplate and intend Reed to be a profit participant and RHI (through its predecessor Cabin Fever) paid him as such. Moreover, Defendants' "lack of profits" and "contemplation" defenses do not pass Rule 56(c) muster because their factual underpinnings remain unproven, contain errors, are not premised upon first-hand knowledge, and otherwise raise questions as to their accuracy and reliability which, at a minimum, warrant further development as contemplated by Civil Rule 56(f).

## CONCLUSION

No matter how Defendants couch the new arguments and evidence offered via their reply briefs, Sixth Circuit case law precludes consideration of those new arguments and evidence so as to eliminate the prejudice triggered by their late submission. Accordingly, the Court should strike the declarations of Judy Jenness, Gary Haber, and Jeff Waxman, the supplemental declarations of Ross Schilling and Jeff Ringler, and RHI's new arguments premised upon the parole evidence rule, failure of consideration, and agency. The Court should also grant Plaintiffs' request for leave to file their Sur-reply Brief addressing the LS Defendants' newly invigorated theories and caselaw. Finally, this Court should either strike the Defendants' "lack of profits" and "contemplation" defenses or stay the question for further discovery in light of the undeveloped and uncorroborated factual underpinnings for those defenses.

Respectfully submitted,

s/ H. Alan Rothenbuecher
H. Alan Rothenbuecher, Esq.
   hrothenbuecher@szd.com
T. Earl LeVere, Esq.
   elevere@szd.com
Schottenstein Zox & Dunn Co., LPA
US Bank Center at Playhouse Square
1350 Euclid Avenue, Suite 1400
Cleveland, Ohio 44115
Phone: (216) 394-5075
Facsimile: (216) 394-5092

*Attorneys for Plaintiffs Craig Reed and Survivor Films, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2009, a copy of the foregoing Plaintiffs' REPLY TO DEFENDANTS' OPPOSITIONS TO PLAINTIFFS' MOTION TO STRIKE was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

s/ H. Alan Rothenbuecher
H. Alan Rothenbuecher