**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **CRAIG REED, et al.,** ) | **CASE NO. 1:08CV1761** |
| ) | |
| Plaintiffs, ) | **JUDGE CHRISTOPHER A. BOYKO** |
| ) | |
| vs. ) | **OPINION AND ORDER** |
| ) | |
| **FREEBIRD FILM** ) | |
| **PRODUCTIONS, INC., et al.,** ) | |
| Defendants. ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #60) of Lynyrd Skynyrd Defendants for Summary Judgment; Plaintiffs' Motion (ECF DKT #92) to Strike Portions of Defendants' Reply Briefs and Supporting Evidence; and Plaintiffs' Motion (ECF DKT #90) for Leave to File *Instanter* a Sur-Reply Memorandum in Opposition. For the following reasons, Defendants' Motion for Summary Judgment is granted in part and denied in part; Plaintiffs' Motion to Strike is denied; and Plaintiffs' Motion for Leave to File a Sur-Reply is denied.

**I. FACTUAL BACKGROUND**

Plaintiff Craig Reed ("Reed") worked as a professional stage hand for multiple professional recording and performing artists, including Lynyrd Skynyrd. In 1976 and 1977, Reed shot approximately ninety minutes of concert and "behind the scenes" film footage containing various members of Lynyrd Skynyrd and its crew. Later, Reed edited the footage to create two reels of film, "Reel 1" and "Reel 2." On July 31, 1995, Reed entered into a written license agreement with Defendant Freebird Video (n/k/a Freebird Film) for the use of

his film footage in a Lynyrd Skynyrd documentary, to be produced by Freebird and Defendant Cabin Fever. At the outset, Freebird agreed to pay Reed, or cause Cabin Fever to pay Reed, the sum of $2500.00. If the footage ultimately were included in the documentary, an additional $2500.00 would be paid upon the initial public exhibition of the documentary. The agreement provided further: "In addition, we agree to pay to you 2.5% of our net profits derived from exploitation of the Documentary itself in any manner or media. We shall pay you your percentage of net profits as and when we receive monies, it being understood that there is no guarantee of any profits being generated."

On January 8, 2008, Reed assigned all rights, title and interest in Reel 1 and Reel 2 to Plaintiff Survivor Films, Inc. Survivor holds United States Copyright Registration No. PA 1-596-609 for Reel 1 and United States Copyright Registration No. PA 1-596-611 for Reel 2.

Defendant, Freebird Film Productions, Inc., is a film and video production company organized under the laws of the State of Florida, with its principal place of business in Orange Park, Florida. Defendant Freebird Film produced marketed, and distributed one or more video productions (DVD's) related to the band Lynyrd Skynyrd.

Defendant, Fly On, Inc., is a corporation organized under the laws of the State of Florida, with its principal place of business in Encino, California.

Defendant, Vector Management, Inc., is a Tennessee corporation , with its principal place of business in Nashville, Tennessee.

Defendant, Gary Rossington, is an individual residing in the State of California and is a founding and current member of Lynyrd Skynyrd. He is alleged to be the president and director of Freebird Film; president and director of Fly On; and president and director of

Defendant, Lynyrd Skynyrd Productions, Inc., a California corporation principally doing business in Encino, California.

Defendant, Ross Schilling, is a Tennessee resident, who allegedly is employed by Vector, and who serves as part of the management team for the Lynyrd Skynyrd band.

Count I of Plaintiffs' Complaint sounds in breach of contract.  Plaintiffs allege Reed and Freebird and Cabin Fever entered into an agreement, by which Freebird and Cabin Fever would pay Reed 2.5% of the net profits derived from "Freebird . . . The Movie."  Although Plaintiffs have performed all their obligations under the Agreement, Plaintiffs allege Defendants have breached by failing to pay Reed or Survivor 2.5% of the net profits.

Count II alleges Copyright Infringement, to-wit: Defendants included excerpts of Reel 1 and/or Reel 2 in live performances and video projects, which constitutes unauthorized reproduction of Plaintiffs' copyrighted work; unauthorized distribution of copies of Plaintiffs' copyrighted work; unauthorized public performance of Plaintiffs' copyrighted work; and unauthorized public display of Plaintiffs' copyrighted work, in violation of 17 U.S.C. §§ 106(1)-(5).

Defendants, Freebird Film Productions, Inc., Fly On, Inc., Vector Management, Inc., Gary Rossington, Ross Schilling, and Lynyrd Skynyrd Productions, Inc. (collectively "Lynyrd Skynyrd Defendants"), move for summary judgment in their favor, dismissing Plaintiffs' claims in their entirety.  Plaintiffs have submitted a timely response and, simultaneously, request relief under Fed. R. Civ. P. 56(f), to conduct discovery relating to Defendants' "lack of profits" defense.

## II. LAW AND ANALYSIS

**Standard of Review**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006); *Turner v. City of Taylor*, 412 F.3d 629, 637 (6th Cir. 2005). The initial burden to demonstrate the absence of a genuine issue of material fact rests with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "When a motion for summary judgment is properly made and supported" the initial burden shifts to the opposing party, who "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *accord Leadbetter v. Gilley*, 385 F.3d 683, 689-90 (6th Cir. 2004); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003). A fact is material only if its resolution "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

When deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006); *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). "Thus, any direct

evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true." *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004).  However, summary judgment should be granted if the party bearing the burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. 317). Furthermore, the court is not required "to search the entire record to establish that it is bereft of a genuine issue of material fact." *Betkerur v. Aultman Hosp. Ass'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996).  Rather, the burden falls on the non-moving party to designate specific facts or evidence in dispute. *Anderson*, 477 U.S. at 249-250.

**Breach of Contract**

In Count I of their Complaint, Plaintiffs allege Reed, Freebird and Cabin Fever entered into a written agreement.  It is unquestioned that Defendants, Fly On, Vector, Rossington, Schilling and Lynyrd Skynyrd Productions were not parties to that agreement.  A complaint must "give the defendants 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426 at 437 (6th Cir. 2008) (quoting *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996)).  The Court finds Plaintiffs' Complaint never named Defendants, Fly On, Vector, Rossington, Schilling and Lynyrd Skynyrd Productions, nor gave those Defendants fair notice of a breach of contract claim, nor of the grounds upon which it relies.  Therefore, the Motion for Summary Judgment on Count I of Plaintiffs' Complaint is granted in part as to Defendants, Fly On, Vector, Rossington, Schilling and Lynyrd Skynyrd Productions.

The remaining Defendant, Freebird Film, argues summary judgment should be granted

in its favor because there has been no breach.  Under the Agreement, Freebird Film is obligated to pay Reed 2.5% of net profits derived from the Documentary.  Evidence produced by Co-Defendant, Hallmark/RHI, successor-in-interest to Defendant, Cabin Fever, reflects that no net profits have been paid to Freebird Film, since costs associated with the Documentary have yet to be recouped.  Defendant Freebird Film contends, therefore, no share of profits is owed to Plaintiffs unless and until profits are generated.

In their Opposition Memorandum, Plaintiffs request discovery relating to Defendants' "lack of profit" defense.

Subsection (f) of Fed. R. Civ. P. 56 reads as follows:

(f) When Affidavits Are Unavailable.  If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
    (1) deny the motion;
    (2) order a continuance to enable affidavits to be obtained, depositions
       to be taken, or other discovery to be undertaken; or
    (3) issue any other just order.

To fulfill these requirements of Rule 56(f), the party's affidavit must show with "'some precision the materials he hopes to obtain with further discovery, and exactly how he expects those materials would help him in opposing summary judgment.'" *Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004) (quoting *Simmons Oil Corp. v. Tesoro Petroleum Corp.*, 86 F.3d 1138, 1144 (Fed. Cir. 1996)).

According to the Affidavit of Plaintiffs' counsel (ECF DKT #78), Plaintiffs cannot present "facts in opposition to Defendants' contention that costs have exceeded income (thereby precluding any profit payments), because Plaintiffs have not received access to the information to test that contention."  Plaintiffs require information and documentation

underlying the summaries and recapitulations provided by Defendants.  Pursuant to Fed. R. Civ. P. 56(f), the Court grants Plaintiffs leave to serve document requests and to depose the declarants with regard to the financial statements for the Documentary, "Freebird . . . The Movie" in order to adequately oppose the dispositive motion.  Therefore, the Motion for Summary Judgment on Count I of Plaintiffs' Complaint is denied as to Defendant Freebird Film.

**Copyright Infringement**

Plaintiffs allege, in Count II of their Complaint, that they did not authorize nor expressly or impliedly license Defendants' copying of Reel 1 and/or Reel 2 in Defendants' various video products, commercials, music videos, or live concert events; and that such copying constitutes copyright infringement in violation of 17 U.S.C. §§ 106(1)-(5).  For their part, the Lynyrd Skynyrd Defendants contend any and all uses of Reel 1 are permitted under the Documentary Agreement; Plaintiff Reed expressly or impliedly licensed the use of Reel 2; and, in any event, Defendants use is a "fair use" under 17 U.S.C. § 107.

The Documentary Agreement (ECF DKT #50-2), at paragraph 3, recites: "We shall also have the right to exploit **the Documentary, including the Footage**, in any manner or media throughout the universe in perpetuity without restriction and without obligation, financial or otherwise to you, except as set forth herein." (Emphasis added).  Defendants assert this provision clearly gives them the right to exploit Plaintiffs' footage "in any manner or media throughout the universe in perpetuity," including in the ninety-seven minute video product called LYNYRD SKYNYRD - LYVE FROM STEEL TOWN, in the Sweet Home Alabama music video, in the Free Bird and Simple Man music videos, in the one hundred

twenty minute Vicious Cycle DVD, and at all live concerts. On the other hand, Plaintiffs contend the plain language of the Agreement **only** grants Defendants the right to exploit the Documentary, not the Footage, independently as a separate and distinct work.

The construction of a contract presents a question of law for the Court, and is appropriate for resolution on a motion for summary judgment. *Gencorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 818 (6th Cir. 1999). Any ambiguity must appear on the face of the contract; and extrinsic evidence cannot render an otherwise unambiguous contract provision ambiguous. *Shifrin v. Forest City Enterprises, Inc.*, 64 Ohio St.3d 635, 638 (1992). Where the terms of a contract, however, are reasonably susceptible to more than one interpretation, the parties' intent is relevant. *Amstutz v. Prudential Ins. Co. Of America,* 136 Ohio St. 404, 408 (1940); *Lewis v. Mathes*, 161 Ohio App.3d 1, 9 (2005). The determination of the parties' intent is a question of fact. *Lewis, id*.

The language of paragraph 3 of the Documentary Agreement is unclear and susceptible to either Defendants' broad construction, or Plaintiffs' more restrictive interpretation, with regard to the licensed use of Reel 1. Therefore, consideration of the parties' intent is relevant and constitutes an issue for the jury.

As concerns Reel 2, Defendants contend Plaintiff Reed expressly and/or impliedly licensed its use for touring, pay-per-view programs and DVD's in 2003 and thereafter. Declaration of Ross Schilling, ECF DKT #62 at ¶¶ 6, 7, and 8. Craig Reed insists he allowed the use of his Reel 2 footage for the 2003 Nashville concert and simultaneously taped pay-per-view; but not for any other live concerts or recording of any other concerts in 2003, 2004, 2005, or 2007. Declaration of Craig Reed, ECF DKT #77 at ¶¶ 36, 37. In light of these

contrasting declarations, the Court finds a genuine issue of material fact exists regarding an express and/or implied license of Plaintiffs' Reel 2 footage.

In their last argument against liability for copyright infringement, Defendants assert that the doctrine of "fair use," codified at 17 U.S.C. § 107, permits all of the uses of Plaintiffs' footage complained of in Count II of the Complaint. Section 17 U.S.C. § 107 of the 1976 Copyright Act reads in pertinent part:

> . . . In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include -
>
> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

Plaintiffs and Defendants disagree as to the nature of the use – whether it served as an advertising and marketing tool for the band's concerts, or whether it was meant to pay homage to deceased members of the band and to educate concert-goers about the historical roots of Lynyrd Skynyrd. The parties also have significant disagreement as to the impact upon the potential market value of the copyrighted work, i.e., whether Reed would be able to market the backstage "home" videos without the consent of the band members whose images are contained in it.

"Fair use" is a mixed question of fact and law. *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 560 (1985). In view of the competing declarations submitted by the parties for the Court's consideration, and because a "district court should be cautious in granting a Rule 56 motion in this area," the Court finds the issue of whether Defendants' use of Reel 1 and Reel 2 constitutes "fair use," and, thus, is not copyright infringement, should be decided by a jury. *Jackson v. Warner Bros. Inc*., 993 F.Supp. 585, 587 (E.D.Mich. 1997).

Therefore, Defendants' Motion for Summary Judgment on Count II of Plaintiffs' Complaint, sounding in copyright infringement, is denied.

### III. CONCLUSION

Upon consideration of the briefs, evidence and applicable law, the Lynyrd Skynyrd Defendants' Motion for Summary Judgment is granted in part and denied in part. Based upon this Court's ruling, and because the Court did not rely upon the additional declarations submitted with Defendants' Reply Brief, Plaintiffs' Motion to Strike and Plaintiffs' Motion for Leave to File *Instanter* a Sur-Reply Memorandum are denied.

**IT IS SO ORDERED.**

**DATE: __09/30/09_____**

   **S/Christopher A. Boyko**
**CHRISTOPHER A. BOYKO**
**United States District Judge**