**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **CRAIG REED,** *et al.,* )<br>)<br>**Plaintiffs,** )<br>)<br>vs. )<br>)<br>**FREEBIRD FILM PRODUCTIONS, INC.,** )<br>*et al.,* )<br>)<br>**Defendants.** )<br>) | **CASE NO. 1:08CV1761**<br><br>**JUDGE CHRISTOPHER A. BOYKO** |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANT LYNYRD SKYNYRD PRODUCTIONS, INC.'S
MOTION FOR LEAVE TO FILE ITS FIRST AMENDED ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

**I.     INTRODUCTION**

Military strategist Carl von Clausewitz noted that the best defense is a good offense. Defendant Lynyrd Skynyrd Productions, Inc. ("Lynyrd Skynryd") seeks to prove this adage true today—now that this action has been pending for over eighteen months—by seeking leave to assert <u>six</u> trademark-related counterclaims (the "Proposed Counterclaims") that allegedly accrued nearly ten years ago. This Court should deny Defendant's motion for several reasons. First, Defendant's proffered claim for "cybersquatting" (Count III) related to Plaintiffs' www.skynyrdsurvivor.com domain name is futile because the pleadings make clear that Plaintiff Reed "believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful."  15 U.S.C. § 1125(d)(1)(B)(ii).  Second, Defendants' claims for trademark infringement and dilution must fail because Plaintiffs used the Lynyrd Skynyrd name to describe video, memorabilia, and information specifically related to the band itself. As a result, Plaintiffs' use the asserted Lynyrd Skynyrd trademarks is a fair use as a matter of law. Finally, Defendant's proposed counterclaims are untimely and futile because they arise out of

conduct that, by Defendant's own affirmative allegation, began ten yeas ago and continued thereafter with Defendant's knowledge, despite multiple alleged communications (and threats) to the Plaintiffs to discontinue the conduct.  Having slept on its rights for a decade, in the face of the multiple communications with Plaintiffs on the issue, the equitable doctrine of laches now bars Defendant's claims or, at a minimum, constitutes an "undue delay" and evidences Defendant's bad faith in seeking to assert its claims now.

Ultimately, the respective sizes of the parties and the Defendant's decade-long history of acquiescing to Plaintiffs' conduct makes it clear that Defendant now wishes to assert it claims solely for the improper purpose of increasing Plaintiffs' enforcement costs and gaining leverage against Plaintiffs' claims—which Defendants have already admitted have merit and for which Defendants have admitted they are liable.  Such is not the role of litigation nor is it a proper motive for invoking the power of this Court.  Defendant's proposed counterclaims are futile, improper, and untimely.  Accordingly, this Court should deny Defendant's motion for leave to amend its Answer to assert its new counterclaims.

**II.     LAW AND ARGUMENT**

    **A.     Standard Of Review**

Rule 15(a) permits amendments to pleadings "by leave of court or by written consent of the adverse party" and states that "leave shall be freely given when justice so requires."  Fed. R. Civ. Pro. 15(a).  Although motions to amend are commonly granted, a court should deny leave to amend in circumstances involving "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment."  <u>Williams v. Detroit Bd. of Educ.</u>, 306 Fed. Appx. 943, 949 (6th Cir. 2009) (quoting <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)); <u>Courie v. Alcoa Wheel & Forged Products</u>,

577 F.3d 625, 633 (6th Cir. 2009).  The decision to deny a motion for leave to amend rests in the discretion of the trial court.  <u>Williams</u>, 306 F. Appx. at 949.  With this standard in mind, the Court should deny Defendant's motion.

>  **B.     Defendant's Motion to Add a Counterclaim For Cybersquatting is Futile Because Plaintiffs Acted in Good Faith.**

Perhaps the most obvious statutory deficiency in Defendant's Proposed Counterclaims lies in Defendant's claim for cybersquatting under 15 U.S.C. § 1125(d)(1) (the "ACPA"), proposed Count III.  Defendant's proposed Count III takes issue with Plaintiffs' registration and use of the domain name www.skynyrdsurvivor.com.  See proposed Counterclaim at ¶ 183.  In order to prevail on a claim for cybersquatting under the ACPA, a claimant must prove, <u>inter alia</u>, that the domain name registrant (the Plaintiffs here) acted "with a bad faith intent to profit" when it registered or used the accused domain name.  15 U.S.C. § 1125(d)(1)(A)(i).  The ACPA, however, specifically provides that there can be no bad faith, as a matter of law, "in any case where the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful."  15 U.S.C. § 1125(d)(1)(B)(ii).  The pleadings in this case (including the proposed new counterclaims) and the Declaration of Craig Reed filed herewith make it clear that the Plaintiffs lacked the requisite bad faith to support a claim under the ACPA.

Defendant Lynyrd Skynyrd challenges Plaintiffs' registration and use of the URL "www.skynyrdsurvivor.com."  Despite the myriad other websites that include SKYNYRD as part of their domain name (a Google search of "allinurl: Skynyrd" yielded "about 807,000" results), and despite holding no trademark registration for SKYNYRD standing alone (Proposed

Counterclaims at ¶ 151 (referring to SKYNYRD as a "common law mark"), Defendant claims the exclusive right to use SKYNYRD in any web address related to the field of entertainment.[1]

This position paints Defendant's rights too broadly. Even if true, however, there can be no finding of bad faith on the part of the Plaintiffs. There is no dispute that Plaintiff Reed worked for Lynyrd Skynyrd for nearly 30 years and that he was a "survivor" of the famous plane crash that claimed the lives of several of the original Lynyrd Skynyrd band members. As such, he is truly a "Skynyrd survivor." Defendant is seeking to preclude Plaintiffs from using the term SKYNYRD in its descriptive sense, which, under the Lanham Act, goes too far. Moreover, as the Declaration of Plaintiff Reed shows, Plaintiff Reed, at all times, believed in good faith that he could use the accused domain name to tell his story and to sell and display his memorabilia, photos, and videos, given that he was, in fact, a "Skynyrd survivor." See Reed Declaration attached hereto as Exhibit A. In light of Plaintiff Reed's longtime affiliation with the band, as well as his factual status as a "survivor" of the Lynyrd Skynyrd plane crash, Defendant's motion for leave to assert its cybersquatting counterclaim is futile because Plaintiffs lacked the "bad faith" necessary to support the claim. Accordingly, this Court should deny Defendant's request to assert its counterclaim for cybersquatting.

---

[1] Indeed, Defendant takes great pride in the fact that it has three registrations for LYNYRD SKYNYRD that are now incontestable under 15 U.S.C. § 1115(b). Not only are none of these registrations for the term SKYNYRD standing alone, none of the registrations is for the viewing or selling of "memorabilia, photographs, collectables, and films embodying the likenesses of the Lynyrd Skynyrd band and its members" as Defendant alleges Plaintiffs' site does. See Proposed Counterclaims at ¶¶ 147-149 (identifying registrations for live musical performances, pre-recorded music, and apparel) and ¶¶ 153-154 (referring to Plaintiffs' website). Because none of the cited registrations cover Plaintiffs' activities at the www.skynyrdsurvivor.com (now, www.syrvyvyrfilms.com) website, their status as "incontestable" registrations is irrelevant. An incontestable registration is only evidence of the registrant's right to use the mark in connection with the goods or services described in the registration. 15 U.S.C. § 1115(b).

### C. Defendant's Proposed Trademark Infringement and Dilution Claims are Futile Because The Pleadings Make Clear That Plaintiffs' Use of the Names "Lynyrd Skynyrd" and "Skynyrd" Was a Fair Use.

Defendant's remaining counterclaims (Counts I-II and III-VI) each seek redress for alleged trademark infringement or trademark dilution. Each of these proffered claims, however, suffers from similar frailties under trademark's fair use doctrine. The claims all relate to Plaintiffs' references to Lynyrd Skynyrd and related memorabilia, photos, and film on Plaintiffs' www.skynyrdsurvivor.com and www.syrvyvyrfilms.com website. Based upon the allegations in the pleadings and in Defendant's Proposed Counterclaims, there is no dispute that Plaintiff Reed was personally and deeply involved with Lynyrd Skynyrd for over thirty years. Plaintiffs use the terms "Lynyrd Skynyrd" and "Skynyrd" (assuming it is protectable as a mark) to refer specifically to the Defendant and to the band as a whole, i.e., to the band with which he was involved for so many years. Using a mark to identify, describe, or reference the mark owner is a textbook "fair use" under the Lanham Act.[2]

"[A] trademark, unlike a copyright or patent, is not a 'right in gross' that enables a holder to enjoin all reproductions." ETW Corp. v. Jireh Pub., Inc., 332 F.3d 915, 922 (6th Cir. 2003) (citing Boston Athletic Ass'n v. Sullivan, 867 F.2d 22, 35 (1st Cir. 1989); Univ. of Notre Dame Du Lac v. J.C. Gourmet Food Imports Co., 703 F.2d 1372, 1374 (Fed. Cir. 1983)). In Hensley Mfg. v. ProPride, Inc., the Sixth Circuit explained how the trademark fair use defense applies in this context:

> "In evaluating a defendant's fair use defense, a court must consider whether [the] defendant has used the mark: (1) in its descriptive sense; and (2) in good faith." ETW Corp. v. Jireh Pub., Inc., 332 F.3d 915, 920 (6th Cir. 2003). In

---

[2] Counts V and VI of Defendant's Proposed Counterclaims allege claims for trademark infringement under Ohio's unfair competition and deceptive trade practices statutes. Because trademark claims under Ohio law follow the same analysis as those under the Lanham Act, rejection of the federal trademark claims will merit rejection of the state trademark claims as well. ETW Corp. v. Jireh Pub., Inc., 332 F.3d 915, 920 (6th Cir. 2003); Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods., 134 F.3d 749, 754 (6th Cir.1998) (citing Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr., 109 F.3d 275, 288 (6th Cir.1997)).

{H1809479.1 }                                    5

> ETW Corp., this court held that an artist's use of Tiger Woods's name on the back of the envelope containing the artist's print and in the narrative description of the print was "purely descriptive," and that there was "nothing to indicate that [it was] used other than in good faith." Id. at 920-21. Woods's name, the court noted, was used only to describe the content of the print, and all of the materials accompanying the print clearly identified the artist himself as the source of the print. Id. Accordingly, the plaintiff's claim for violation of its trademark "Tiger Woods" was "barred by the fair use defense as a matter of law." Id.

Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 612 (6th Cir. 2009) (affirming the Michigan District Court's dismissal of the trademark owner's claim, stating, "Because the complaint and attached exhibits show that ProPride's uses of Jim Hensley's name are descriptive, and because Hensley Manufacturing did not allege facts from which any inference of bad faith can be drawn, we hold that the fair use defense applies in this case as a matter of law."); see also ETW Corp., 332 F.3d at 920 (citing Car-Freshner Corp. v. S.C. Johnson & Son, Inc., 70 F.3d 267, 270 (2nd Cir. 1995) ("[F]air use permits others to use a protected mark to describe aspects of their own goods[.]")).

Affirming Judge Gaughan's grant of summary judgment against the trademark claimant, ETW Corp., Judge Graham, writing for the Sixth Circuit, specifically stated:

> A celebrity's name may be used in the title of an artistic work so long as there is some artistic relevance. See Rogers v. Grimaldi, 875 F.2d 994, 997 (2nd Cir. 1989); New York Racing Ass'n v. Perlmutter Publ'g, Inc., No. 95-CV-994, 1996 WL 465298 at *4 (N.D.N.Y. July 19, 1996) (finding the use of a registered mark on the title of a painting protected by the First Amendment). The use of Woods's name on the back of the envelope containing the print and in the narrative description of the print are purely descriptive and there is nothing to indicate that they were used other than in good faith. The prints, the envelopes which contain them, and the narrative materials which accompany them clearly identify Rush as the source of the print. Woods is mentioned only to describe the content of the print.

Id. at 920-21. Taking the allegations and Exhibits to Defendant's proposed counterclaims as true, and applying Judge Graham's reasoning, Plaintiffs did exactly the same thing here that the defendant did in ETW Corp. Plaintiffs identified information, photos, video, and products as

being about, or related to, Lynyrd Skynyrd. See Exhibit I to Defendant's proposed Counterclaim. Plaintiffs used "Lynyrd Skynyrd" in its descriptive and fair use sense to describe and explain the video, photos, memorabilia, and information that the website contains.

These undisputed facts and the nature of Defendant's proposed pleading clearly show that the counterclaims, if allowed, would be futile. As the Sixth Circuit made clear less than six months ago:

> [T]here is no reason not to grant a motion to dismiss where the undisputed facts conclusively establish an affirmative defense as a matter of law. See In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 16 (1st Cir. 2003) (holding that a suit can be dismissed on the basis of an affirmative defense if the facts establishing the defense are "definitively ascertainable from the allegations of the complaint" and they "conclusively establish the affirmative defense"); Tregenza v. Great Am. Commc'ns Co., 12 F.3d 717, 718 (7th Cir. 1993) (noting that if a plaintiff "pleads facts that show that his suit is time-barred or otherwise without merit, he has pleaded himself out of court"). Here, the facts Hensley Manufacturing alleged in its complaint, as well as the attached exhibits, demonstrated that there was no likelihood of confusion and that the fair use defense conclusively applied as a matter of law. See In re Dual-Deck Video Cassette Recorder Antitrust Litig., 11 F.3d 1460, 1467 (9th Cir. 1993) (affirming district court's grant of motion to dismiss trademark infringement claim because defendant's use was fair use as a matter of law). Hensley Manufacturing contends that "facts may exist that establish a level of consumer confusion" and that "facts may exist that establish that 'Hensley' is not being used fairly and in good faith." Appellant's Br. at 13 (emphasis added). But mere speculation is insufficient; it was Hensley Manufacturing's burden to allege those facts, if they indeed exist, in the first instance. Simply put, Hensley Manufacturing failed to state a claim for relief that is "plausible on its face." Twombly, 550 U.S. [544,] 570, 127 S. Ct. 1955 [(2007)]; see also Iqbal, 129 S. Ct. [1937,] 1949 [(2009)] (noting that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully").

Id. at 613. Lynyrd Skynyrd cannot legally prevent the entire world from talking about Lynyrd Skynyrd or about products that relate to or embody likenesses of Lynyrd Skynyrd or its members. Trademark law's fair use doctrine precludes such a monopoly. Because each of Defendant's Proposed Counterclaims suffers from this infirmity, this Court should deny Defendant's motion for leave to amend its answer, affirmative defenses, and counterclaims.

**D.    Defendant's Proposed Counterclaims Are Untimely and Are Advanced for An Improper Purpose.**

As is noted above, the Sixth Circuit has made clear that courts should deny leave to amend in circumstances involving "undue delay, bad faith, or dilatory motive on the part of the movant . . . ." See Williams v. Detroit Bd. of Educ., 306 Fed. Appx. 943, 949 (6th Cir. 2009) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)); Courie v. Alcoa Wheel & Forged Products, 577 F.3d 625, 633 (6th Cir. 2009).  Here, Defendant Lynyrd Skynyrd is asserting its claims purely as a tool to obtain a tactical advantage in the litigation by increasing the costs to Plaintiffs, rather than in an effort legitimately to defend or protect rights that Defendant believes Plaintiffs infringed.  Defendant's tactic amounts to "bad faith" and justifies denying the amendment.  Additionally, Defendant's decade-long delay is "undue" under the circumstances and precludes the amendment under a theory of laches.

Defendant's Proposed Counterclaims make clear that Plaintiffs began the accused conduct nearly a decade ago.  See, e.g., Proposed Counterclaims at ¶¶ 152-154 (stating that Plaintiff Reed registered and began using the www.skynyrdsurvivor.com domain name in June 2000); Id. at ¶ 155 (referring to Defendant "repeatedly" accusing Plaintiff Reed of infringing Defendant's trademarks and demanding that Plaintiff Reed deactivate his www.skynyrdsurvivor.com website but further alleging that "those demands were all ignored"); Id., at Exhibit H (purporting to be a December 2000 cease and desist letter from Defendant accusing Plaintiff Reed of infringing Defendant's trademark rights via the www.skynyrdsurvivor.com website).  In Exhibit H, Defendant even threatened "to take appropriate action under the law to enforce" its perceived rights if Plaintiff Reed failed to comply with Defendant's requests.  Id. at Ex. H.  Yet, despite Defendant's allegation that Plaintiff "ignored" this demand like all the alleged others (Id. at ¶ 155), Defendant did nothing

for nearly ten years and not until over 18 months after Plaintiffs commenced litigation against the Defendant and its related entities.³

Defendant's delay in asserting its Proposed Counterclaims was unjustified. A failure to assert and protect one's trademark rights results in their loss or renders them unenforceable later. Indeed, even with an incontestable mark, the Lanham Act provides "[t]hat equitable principles, including laches, estoppel, and acquiescence, are applicable." 15 U.S.C. § 1115(b)(9). The Sixth Circuit frequently applies the equitable doctrine of laches to bar recovery by trademark claimants, like the Defendant, who fail to proceed diligently.

> Laches is the "negligent and unintentional failure to protect one's rights." [Elvis Presley Enterprises, Inc. v.] Elvisly Yours[, Inc.], 936 F.2d [889,] 894 [(6th Cir. 1991)}. A party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it. See Induct-O-Matic Corp. v. Inductotherm Corp., 747 F.2d 358, 367 (6th Cir. 1984). There is a strong presumption that a plaintiff's delay in bring suit for monetary relief is not unreasonable as long as the analogous statute of limitations has not lapsed. See Tandy Corp. v. Malone & Hyde, Inc., 769 F.2d 362, 365-66 (6th Cir. 1985). "Only rarely should laches bar a case before the analogous statute has run." Id. at 366.

Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc., 270 F.3d 298, 320-21 (6th Cir. 2001) (affirming the district court's grant of summary judgment in defendant's favor under a laches theory where had waited four years to assert its trademark claim). Ohio considers trademark infringement and trademark dilution to be injuries to personal property and applies a two-year statute of limitations. See Ohio Rev. Code § 2305.10; Ameritech, Inc. v. American Information Technologies Corp., 811 F.2d 960, 963 (6th Cir.1987); Freed v. Farag, 994 F. Supp. 887, 891 (N.D. Ohio 1997). Under Sixth Circuit precedent, laches would clearly preclude a claim (and, by

---

³ Exhibit H even goes so far as to threaten Plaintiff Reed's employment with the band if he refuses to comply, stating, "The Band and its management are very unhappy with your activities, and you are putting your employment in jeopardy." Proposed Counterclaims at Ex. H. This is merely one example of how Defendants used Plaintiff Reed's employment to gain an unfair advantage over him. Another is when they threatened him into allowing the band to display portions of his film at the band's live shows for only $100 per show.

analogy, an amendment to assert one) where the claimant, with knowledge of the accused conduct, waits <u>five times</u> the applicable statute of limitations before bringing its claim. It is not error to deny a motion for leave to amend when the claim to be asserted is barred by the statute of limitations. See <u>Beatty v. Sunbeam Corp.</u>, 110 Fed. Appx. 677 (6th Cir. 2004) (per curiam).[4] At a minimum, Defendant's conscious decision not to assert a claim for ten years until faced with claims by Plaintiffs upon which Defendant has admitted liability is clearly an "undue delay" and shows Defendant's bad faith in filing its claims.

### III. CONCLUSION

Based upon the foregoing, this Court should deny Defendant's request to assert its Proposed Counterclaims. Denial of leave to amend is proper in any case involving "undue delay, bad faith, or dilatory motive" or where the proposed amendment would be futile. Defendant's cybersquatting counterclaim (Count III) is futile because Plaintiffs lacked the requisite "bad faith" necessary to support and prevail upon such a claim. Similarly, Defendant's other Proposed Counterclaims fail under trademark law's fair use doctrine because Plaintiffs only used the terms LYNYRD SKYNYRD and SKYNYRD to refer to memorabilia, photos, film, and situations involving or related to Lynyrd Skynyrd. Under Sixth Circuit precedent, Plaintiffs are entitled to use those terms descriptively to refer to the band, itself.

Finally, Defendant knowingly waited nearly <u>ten years</u> to bring the claims it seeks leave to assert. As a result, Defendant's Proposed Counterclaims are now either time-barred, barred by

---

[4] See, <u>Howard v. U.S.</u>, 533 F.3d 472, 475-76 (6th Cir. 2008) (considering Rule 15 in the context of a request for habeas relief and stating, "Any attempt to raise a new claim for relief in a Rule 15 motion to amend pleadings is subject to AEDPA's one-year statute of limitations. See 28 U.S.C. § 2244(d); § 2255(f). Consequently, a Rule 15 motion will be denied where it is filed after that period expires unless the proposed amendment relates back to the date of the original pleading within the meaning of Rule 15(c)(2). A claim that 'asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth' will not so relate back." (citations omitted)). Here, however, even if Defendant could relate its Proposed Counterclaims back to the date of its original answer, which it cannot, its claims would still be more than six years outside of the statute of limitations.

laches, or simply not very important to Lynyrd Skynyrd. Regardless, the only reasonable conclusion to be drawn from the timing is that the Proposed Counterclaims are not truly about any genuine concern that Plaintiffs are infringing Defendant's rights. Rather, Defendant is now attempting to bring its decade-old claims in an effort, consistent with Defendants' threats throughout the litigation, to increase Defendant's leverage—and Plaintiffs' costs of suit—in the hopes that Plaintiffs will ultimately crumble before the Court adjudicates Plaintiffs' claims. This Court should not allow such an abusive practice and should, therefore, deny Defendant's motion for leave to amend its Answer, Affirmative Defenses, and Counterclaims.

                Respectfully submitted,

                s/ H. Alan Rothenbuecher
                H. Alan Rothenbuecher, Esq.
                  hrothenbuecher@szd.com
                T. Earl LeVere, Esq.
                  elevere@szd.com
                Schottenstein Zox & Dunn Co., LPA
                US Bank Center at Playhouse Square
                1350 Euclid Avenue, Suite 1400
                Cleveland, Ohio  44115
                Phone: (216) 394-5075
                Facsimile: (216) 394-5092

                *Attorneys for Plaintiffs Craig Reed and Survivor Films, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2010, a copy of the foregoing Plaintiffs' PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT LYNYRD SKYNYRD PRODUCTIONS, INC.'S MOTION FOR LEAVE TO FILE ITS FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's CM/ECF system.

s/ H. Alan Rothenbuecher  
H. Alan Rothenbuecher

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **CRAIG REED,** *et al.*, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **CASE NO. 1:08CV1761** |
| vs. ) | |
| ) | **JUDGE CHRISTOPHER A. BOYKO** |
| **FREEBIRD FILM PRODUCTIONS, INC.,** ) | |
| *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

**DECLARATION OF CRAIG REED REGARDING
DEFENDANT LYNYRD SKYNYRD PRODUCTIONS, INC.'S
MOTION TO AMEND COUNTERCLAIMS**

I, Craig Reed, hereby declare and state as follows:

1. I am Craig Reed, one of the Plaintiffs in the above-named action. I am also the sole owner of Plaintiff Survivor Films, Inc.

2. I am over the age of 18 and have first-hand knowledge of the facts set forth in this Declaration. If called upon to testify in this matter, I could and would testify truthfully and accurately to the facts set forth herein.

3. I was the registrant and owner of the domain name www.skynyrdsurvivor.com.

4. I selected that domain name because I was a "survivor" of the famous 1977 plane crash that killed several members of Lynyrd Skynyrd.

5. As a survivor of the Lynyrd Skynyrd plan crash, I believed that I could use that domain name to tell my story about the time I worked with Lynyrd Skynyrd and to sell memorabilia from my time when I was involved with, and working for, Lynyrd Skynyrd.

6.      I considered the members and crew of Lynyrd Skynyrd (and their families) to be my friends. I never intended to profit wrongfully at their expense through the use of the www.skynyrdsurvivor.com domain name and do not believe that I ever did so.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 6th day of March 2010.

                                           s/Craig Reed
                                           Craig Reed